221 P.3d 1265 (2009)
Dlynn LANDRETH, Appellant,
v.
Amit MALIK, Respondent.
No. 49732.
Supreme Court of Nevada.
December 24, 2009.
Hansen Rasmussen, LLC, and Jonathan J. Hansen, Las Vegas, for Appellant.
Robert W. Lueck, Las Vegas, for Respondent.
Before the Court En Banc.

OPINION
By the Court, DOUGLAS, J.
In this appeal, We consider the subject matter jurisdiction of the family division of the district court. Article 6, Section 6(1) of *1266 the Nevada Constitution grants original and appellate jurisdiction to the district courts in the several judicial districts of the state. Article 6, Section 6(2) permits the Legislature to establish a family court as a division of any judicial district and prescribe its jurisdiction. Acting pursuant to this grant of constitutional authority, the Legislature validly limited the family courts' jurisdiction to the matters specifically enumerated in NRS 3.223. This case involves an unmarried, childless couple, who used to live together and now dispute the ownership of property. Because NRS 3.223 does not give the family courts jurisdiction to adjudicate disputes of this nature, the family court's judgment in this case was void and we reverse.

FACTS
Appellant Dlynn Landreth and respondent Amit Malik met in July 2001 and lived together in Arizona, Texas, and Florida from 2001 until 2004 when, according to Landreth, she decided to end the relationship and move to Las Vegas. The parties never married and did not have children together.
Landreth asserts that she acquired a residence after she arrived in Las Vegas using her own money to pay the down payment and to make subsequent upgrades and improvements to the home. Landreth acknowledges that the couple reunited briefly when Malik moved to Las Vegas, but maintains that in September 2005 the relationship ended.
According to Malik, however, the decision to move to Las Vegas was mutual, with Landreth moving first. Malik contends that the $80,000 used as a down payment to purchase the home originated from a joint checking account and that $50,000 used to renovate the home was also drawn from the couple's joint checking account.
In September 2006, Malik filed an action in the Eighth Judicial District Court's Family Court Division seeking half of the equity in the real property, half of certain personal property acquired during the relationship, and all of his separate personal property. Landreth was served with the complaint on October 4, 2006. She hired counsel to represent her, but she contends that she had difficulty communicating with her counsel because she was living in the Caribbean at the time.
During October and November, Malik granted Landreth numerous oral and written extensions of time to file an answer. On December 14, 2006, however, Malik served Landreth with a notice of intent to apply for a default judgment. Landreth maintains that notwithstanding the notice of intent to file default judgment and after its service, Malik nevertheless granted her additional extensions of time to answer the complaint. Landreth contends that a letter drafted from her counsel to Malik's counsel documented the oral agreement to extend time beyond December 19, 2006. However, on February 27, 2007, Malik filed a default. Landreth filed her answer and a counterclaim on March 5, 2007. Malik served Landreth with a notice of default hearing on March 22, 2007. Subsequently, Landreth filed a motion to set aside the default. In the motion, Landreth asserted that Malik's counsel violated Nevada Rule of Professional Conduct (RPC) 3.5A (formerly Supreme Court Rule 175) by failing to notify Landreth's counsel of his intent to seek a default after Malik had granted Landreth more time for filing her answer.
On May 18, 2007, the family court denied Landreth's motion to set aside the default, finding that Malik had offered Landreth numerous opportunities to answer but that her delay warranted the entry of default. Thus, the court entered default judgment against Landreth. The family court also found that the down payment on the Las Vegas home was drawn from the couple's joint checking account. Therefore, the family court found that Malik was a co-owner of the Las Vegas home and was the owner and co-owner of other personal property located within the residence. Landreth appeals.

DISCUSSION
We have not previously considered the subject matter jurisdiction of the family courts in the judicial districts where they have been established. We take this opportunity to do so.
*1267 For the first time on appeal, Landreth claims that the family court lacked subject matter jurisdiction to hear Malik's case under Nevada Constitution Article 6, Section 6(2) because the family court's jurisdiction is limited to cases specified under NRS 3.223. Specifically, Landreth argues that because the parties were not married, did not have children, and the litigation was limited to a dispute between two unmarried persons over the title and ownership of property, the family court lacked jurisdiction to hear the case. Malik counters that because the parties maintained a meretricious relationship, the family court properly exercised jurisdiction over the case pursuant to Eighth Judicial District Court Rule (EDCR) 5.02(a) and this court's precedent. We conclude that NRS 3.223 prescribes the jurisdiction of the family court and since this case concerned real and personal property acquired during a meretricious relationship, a matter not enumerated in NRS 3.233, the family court lacked subject matter jurisdiction to enter judgment in this case.
At the outset, we note that whether a court lacks subject matter jurisdiction "can be raised by the parties at any time, or sua sponte by a court of review, and cannot be conferred by the parties." Swan v. Swan, 106 Nev. 464, 469, 796 P.2d 221, 224 (1990). However, if the district court lacks subject matter jurisdiction, the judgment rendered is void. State Indus. Ins. System v. Sleeper, 100 Nev. 267, 269, 679 P.2d 1273, 1274 (1984). We therefore address Landreth's subject matter jurisdiction argument, which requires that we review Article 6, Section 6 of the Nevada Constitution and interpret NRS 3.223.
Nevada Constitution Article 6, Section 6 establishes the original and appellate jurisdiction of the district courts and grants district court judges broad enumerated powers. Specifically, Article 6, Section 6(1) provides, in pertinent part:
The District Courts in the several Judicial Districts of this State have original jurisdiction in all cases excluded by law from the original jurisdiction of justices' courts. They also have final appellate jurisdiction in cases arising in Justices Courts and such other inferior tribunals as may be established by law. The District Courts and the Judges thereof have power to issue writs of Mandamus, Prohibition, Injunction, Quo-Warranto, Certiorari, and all other writs proper and necessary to the complete exercise of their jurisdiction. The District Courts and the Judges thereof shall also have power to issue writs of Habeas Corpus....
The Nevada Constitution was later amended to include Article 6, Section 6(2), which provides: "The legislature may provide by law for: ... (b) The establishment of a family court as a division of any district court and may prescribe its jurisdiction." See S.J. Res. 24, 64th Leg. (Nev.1987); 1987 Nev. Stat., file no. 131, at 2444; S.J. Res. 24, 65th Leg. (Nev.1989); 1989 Nev. Stat., file no. 26, at 2222.
Following the constitutional amendment of Section 6(2), the Legislature established a family court, NRS 3.0105, and dictated the original and exclusive jurisdiction of family courts, along with the types of cases in which the family court may have concurrent jurisdiction. NRS 3.223; S.B. 395, 66th Leg. (Nev.1991); 1991 Nev. Stat., ch. 659, §§ 2-5, at 2174-75. In this case, we must clarify the subject matter jurisdiction of the family court, which requires that we interpret NRS 3.223. Statutory interpretation requires that this court look to the statute's plain meaning. MGM Mirage v. Nevada Ins. Guaranty Ass'n, 125 Nev. ___, ___, 209 P.3d 766, 769 (2009). When the statute's meaning is clear and unambiguous, this court must not construe the statute otherwise. Id. Specifically, NRS 3.223 provides:
1. Except if the child involved is subject to the jurisdiction of an Indian tribe pursuant to the Indian Child Welfare Act of 1978, 25 U.S.C. § 1901 et seq., in each judicial district in which it is established, the family court has original, exclusive jurisdiction in any proceeding:
(a) Brought pursuant to title 5 of NRS or chapter 31A, 123, 125, 125A, 125B, 125C, 126, 127, 128, 129, 130, 159, 425 or 432B of NRS, except to the extent that a specific statute authorizes the use of any other judicial or administrative procedure *1268 to facilitate the collection of an obligation for support.
(b) Brought pursuant to NRS 442.255 and 442.2555 to request the court to issue an order authorizing an abortion.
(c) For judicial approval of the marriage of a minor.
(d) Otherwise within the jurisdiction of the juvenile court.
(e) To establish the date of birth, place of birth or parentage of a minor.
(f) To change the name of a minor.
(g) For a judicial declaration of the sanity of a minor.
(h) To approve the withholding or withdrawal of life-sustaining procedures from a person as authorized by law.
(i) Brought pursuant to NRS 433A.200 to 433A.330, inclusive, for an involuntary court-ordered admission to a mental health facility.
(j) Brought pursuant to NRS 441A.500 to 441 A. 720, inclusive, for an involuntary court-ordered isolation or quarantine.
We conclude that the language of NRS 3.223 is plain and clearly establishes that, in the districts in which a family court has been established, the family courts have original and exclusive jurisdiction over cases concerning family matters. Because Article 6, Section 6(2) of the Nevada Constitution specifically delegated to the Legislature the power to create family courts and to prescribe their jurisdiction, we conclude that the family court's jurisdiction is limited to the types of proceedings specified by the Legislature in NRS 3.223. As detailed in the statute, the family court's jurisdiction is limited to proceedings that primarily concern divorce, child custody and support, guardianships, and other family matters. See NRS 3.223. None of the proceedings set forth in NRS 3.223 concern actions between unmarried, childless parties who used to live together and who dispute the division of property allegedly acquired during their relationship. Thus, because the Legislature has not designated real and personal property disputes between unmarried, childless parties as matters within the family court's jurisdiction, we conclude that the family court lacked subject matter jurisdiction to consider the merits of Malik's complaint, and therefore, the default judgment granted by the family court is void.
Our conclusion is confirmed by the review of authority from sister jurisdictions. Other states dictate that family court is a court of limited jurisdiction because it is created and receives authority by statute. See, e.g., Hoffman v. Hoffman, 616 A.2d 294, 298 (Del. 1992) ("The [f]amily [c]ourt has limited jurisdiction."); Adoption House, Inc. v. A.R., 820 A.2d 402, 404 (Del.Fam.Ct.2003) ("The [f]amily [c]ourt is created by and derives its authority solely from statute."); H.M. v. E.T., 65 A.D.3d 119, 881 N.Y.S.2d 113, 116 (2009) (holding that the family court's subject matter jurisdiction is limited and the court only has powers conferred by the constitution or statute); State v. Kenney, 523 A.2d 853, 854 (R.I.1987) ("[T]he [f]amily [c]ourt is a court of limited jurisdiction whose powers are strictly limited to those conferred by the Legislature.").
Like in other jurisdictions, the family courts established in Nevada are a product of legislative enactment whose jurisdiction is specifically established. NRS 3.223; NRS 3.0105(1) ("There is hereby established, in each judicial district that includes a county whose population is 100,000 or more, a family court as a division of the district court."). Because the family courts' existence and jurisdiction is conferred by statute, the family court is a court of limited jurisdiction, and its subject matter jurisdiction is confined to the matters enumerated in NRS 3.223.
We acknowledge that this court previously has recognized the right of unmarried cohabitants to bring a cause of action for "breach of the implied-in-fact contract to acquire and hold property as if the parties were married or general partners." Hay v. Hay, 100 Nev. 196, 198, 678 P.2d 672, 674 (1984); see also Western States Constr. v. Michoff, 108 Nev. 931, 936, 840 P.2d 1220, 1223 (1992). However, the few cases in which this type of claim has been litigated are not instructive because jurisdiction was not at issue in those cases, as it is in this case. Moreover, in those cases, the parties presented evidence that they held themselves out as married couples and that they agreed, either expressly or impliedly, to *1269 hold property as co-owners or as though they were a marital community. Hay, 100 Nev. at 198, 678 P.2d at 673; Michoff, 108 Nev. at 936-37, 840 P.2d at 1223. This is not the case here. Although the parties dispute whether they hold property as co-owners, neither party claims to have held themselves out as a married couple or otherwise qualify as a familial unit, therefore, Hay and Michoff are not applicable.
Our holding in Barelli v. Barelli, 113 Nev. 873, 878, 944 P.2d 246, 249 (1997), is not inconsistent with the rule we announce today. In Barelli, we stated that "both the family and the general divisions of the district court have the power to resolve issues that fall outside their jurisdiction when necessary for the resolution of those claims over which jurisdiction is properly exercised." Id. at 878, 944 P.2d at 249. In Barelli, the parties were divorced and their dispute concerned the rescission or reformation of an oral contract, the resolution of which had the potential to revive claims for alimony and community property. Id. Because the family court had subject matter jurisdiction of a part of the dispute, we upheld its exercise of supplemental jurisdiction as to its remainder. In this case, by contrast, the family court did not have original jurisdiction over any aspect of this dispute. Landreth and Malik were never legally married, did not have a child together, and simply contested the ownership and division of real and personal property acquired during a meretricious relationship. Because the subject matter of their dispute is not a matter specifically enumerated in NRS 3.223 and no residual issues from the resolution of the parties' claims appear to fall within the family court's jurisdiction, Barelli does not apply.
Nonetheless, Malik contends that EDCR 5.02(a)[1] allows a family court to consider cases arising from meretricious relationships, and Malik, in good faith, believed that the family court had jurisdiction to consider the merits of his case. However, we hold that the intended purpose of EDCR 5.02(a) is not to prescribe or extend the jurisdiction of the family court, but to provide parties the option of having private hearings on sensitive family or domestic issues. Therefore, to the extent that Malik argues that EDCR 5.02 provides grounds for jurisdiction over this case, we hold that subject matter jurisdiction may not be conferred by local rules, but rather, the Legislature alone shall prescribe subject matter jurisdiction upon the family court.
Thus, based on the statutorily limited jurisdiction of the family court, as set forth in NRS 3.223, we conclude that the family court lacked jurisdiction to consider Malik's complaint. In so concluding, we also hold that the family court lacked jurisdiction to enter default judgment against Landreth and the default judgment is therefore void.[2]

The absence of subject matter jurisdiction renders the family court order void, not merely voidable
When the district court lacks subject matter jurisdiction, the judgment rendered is void. State Indus. Ins. System v. Sleeper, 100 Nev. 267, 269, 679 P.2d 1273, 1274 (1984). Notwithstanding this general rule, we explained in Mainor v. Nault that "when evidence before the court provides a colorable case for [subject matter] jurisdiction, a district court order is merely voidable rather than void." 120 Nev. 750, 761, 101 P.3d 308, 315 (2004) (citing Vaile v. Dist. Ct., 118 Nev. 262, 272, 44 P.3d 506, 512-13 (2002)).
In Mainor, we cited Vaile, 118 Nev. at 272, 44 P.3d at 513, for the proposition that procedural irregularities render a judgment voidable and not void. Mainor, 120 Nev. at 761 n. 10, 101 P.3d at 316 n. 10. However, the portion of the Vaile decision that we relied on in order to support our ruling in Mainor discussed personal jurisdiction. Vaile, 118 Nev. at 269-73, 44 P.3d at 511-14. Unlike *1270 lack of personal jurisdiction, however, a "lack of subject matter jurisdiction is a jurisdictional defect of the fundamental type .... where there is `an entire absence of power to hear or determine the case.'" Shisler v. Sanfer Sports Cars, Inc., 167 Cal.App.4th 1, 83 Cal.Rptr.3d 771, 775 (2008) (quoting Abelleira v. District Court of Appeal, Third District, 17 Cal.2d 280, 109 P.2d 942, 947 (1941)). Thus, when the district court rendering a judgment lacks subject matter jurisdiction, the judgment is definitively void. See Vaile, 118 Nev. at 275, 44 P.3d at 515; Del Papa v. Steffen, 112 Nev. 369, 375, 915 P.2d 245, 249 (1996); Swan v. Swan, 106 Nev. 464, 469, 796 P.2d 221, 224 (1990); Harrah's Club v. Nevada State Gaming Control Bd., 104 Nev. 762, 764, 766 P.2d 900, 901-02 (1988); State Indus. Ins. System v. Sleeper, 100 Nev. 267, 269, 679 P.2d 1273, 1274 (1984).

CONCLUSION
We conclude that the family court lacked subject matter jurisdiction to consider the substantive and procedural aspects of Malik's case. Because the Legislature expressly limited the jurisdiction of the family court in NRS 3.223, we conclude that the family court lacks original jurisdiction over matters not set forth in that statute. Since this case concerned real and personal property acquired during a meretricious relationship, a matter not enumerated in NRS 3.223, and no other basis for the family court to have exercised original jurisdiction appears, we conclude that the family court lacked subject matter jurisdiction to enter judgment in this case. As a result, we conclude that the family court's order is void, and we vacate the family court's default judgment against Landreth.
We concur: PARRAGUIRRE, CHERRY, and PICKERING, JJ.
HARDESTY, C.J., with whom SAITTA and GIBBONS, JJ., agree, dissenting:
I differ from my colleagues as to their resolution of this appeal and must dissent on two grounds. First, I agree that the Legislature has the constitutional authority to create a family court division of any district court and prescribe its jurisdiction; however I do not believe Article 6, Section 6(2) extends to the Legislature the authority to limit the constitutional powers of a district court judge sitting in the family court division. Therefore, I would hold that the district court judge sitting in the family court did not lack the power and authority to dispose of this case merely because it involved a subject matter outside the scope of NRS 3.223.
Second, because I conclude that the district court judge retained the power necessary to adjudicate the case, I would reach the issue of the family court's denial of the motion to set aside the default and its subsequent entry of default judgment and reverse.

DISCUSSION

Article 6, Sections 6(1) and 6(2) are ambiguous
The majority concludes that NRS 3.223 limits the jurisdiction of a judge sitting in family court and therefore the judge does not have the authority to adjudicate a case that is improperly filed with the family court. To resolve whether a judge lacks the power and authority to adjudicate such a case requires that we interpret Article 6, Section 6 of the Nevada Constitution. Constitutional interpretation utilizes the same rules and procedures as statutory interpretation. We the People Nevada v. Secretary of State, 124 Nev. ___, ___, 192 P.3d 1166, 1170 (2008). We will apply the plain meaning of a statute unless it is ambiguous, "meaning that it is susceptible to `two or more reasonable but inconsistent interpretations.'" Secretary of State v. Burk, 124 Nev. 56, ___, 188 P.3d 1112, 1120 (2008) (quoting Gallagher v. City of Las Vegas, 114 Nev. 595, 599, 959 P.2d 519, 521 (1998)). If the constitutional provision is ambiguous, we then look to the history, public policy, and reason for the provision. Id. Additionally, "the interpretation of a ... constitutional provision will be harmonized with other statutes." We the People Nevada, 124 Nev. at ___, 192 P.3d at 1171.
I conclude that Article 6, Section 6 is ambiguous because it is susceptible to two or more reasonable interpretations. Together, *1271 Sections 6(1) and 6(2) may be reasonably interpreted to grant the Legislature the authority to establish family courts and either: (1) as Landreth argues, allow the Legislature to set limits on the subject matter jurisdiction of the family court and that limitation restrains the power and authority of the judge sitting in family court; or (2) as Malik argues, the powers and authority of a district court judge are granted under Section 6(1), and judges sitting in family court exercise the same constitutional power and authority as other district court judges, including the power to adjudicate cases outside the family court's subject matter jurisdiction. Since both interpretations are reasonable but inconsistent, I would conclude that Article 6 is ambiguous. Accordingly, I would turn to the constitutional provisions' history and harmonize it with other related statutes.

Family court judges are district court judges sitting in family court
While I agree with the majority that the Constitution gives the Legislature the power to pass statutes creating family courts and prescribing their jurisdiction, I depart from my colleagues and conclude that statutory jurisdiction limitations do not limit the constitutional authority of a district court judge.

Senate Joint Resolution 24
Senate Joint Resolution (S.J. Res.) 24, proposing an amendment to the Nevada Constitution to authorize the establishment of a family court division of the district court, was introduced in the 1987 and 1989 legislative sessions and was ultimately approved and ratified by the voters. See S.J. Res. 24, 64th Leg. (Nev.1987); 1987 Nev. Stat., file no. 131, at 2444; S.J. Res. 24, 65th Leg. (Nev.1989); 1989 Nev. Stat., file no. 26, at 2222. Although the legislative history of S.J. Res. 24 suggests that the primary focus was on the need to establish a family court division, it appears that the Legislature intended that the judge of a family court would be a district judge "`equal to all of the other district judges to hear just those domestic matters....'" Hearing on S.J. Res 24 Before the Senate Judiciary Comm., 65th Leg. (Nev., Jan. 24, 1989) (quoting Senator Sue Wagner). Additionally, the explanation for the 1990 ballot question, authorizing the constitutional amendment and permitting the Legislature to establish a family court, provided that "[t]he district judge of this court would specialize in domestic matters." Nevada Ballot Questions 1990, Nevada Secretary of State, Question No. 1 (emphasis added). According to the hearings conducted to establish a family court under S.J. Res. 24, it is apparent that the Legislature intended that the judges sitting in family court would be district court judges and retain the same constitutional powers.

Legislative history of NRS 3.223
NRS 3.223 establishes the original and exclusive jurisdiction of the family court, along with cases in which the family court may have concurrent jurisdiction. NRS 3.223 was conceived from two nearly identical bills introduced during the 1991 legislative session, Assembly Bill (A.B.) 278 and Senate Bill (S.B.) 395. See A.B. 278, 66th Leg. (Nev. 1991); S.B. 395, 66th Leg. (Nev.1991). The bills, however, contained two material differences: first, A.B. 278 asked for more judges than did S.B. 395; and second, A.B. 278 called for a direct election of family court judges, whereas S.B. 395 allowed for the election of district court judges who would then be assigned to or rotated into the family courts. Hearing on A.B. 278 Before the Assembly Judiciary Comm., 66th Leg. (Nev., May 8, 1991) (testimony of Senator Dina Titus). At a hearing on S.B. 395, Senator Dina Titus testified regarding one of the material differences in the bills that:
[t]he senate follows a model used in Clark County now, wherein an individual would run as a district court judge, and every 2 years that individual rotates into the position of family court judge. It was felt by the senate committee that running for a family court judge, rather than district court judge would place a tremendous political burden on individuals who stand for election, based on the sensitive cases involved with the family court system. Family matters would become political matters, and family court judges would have to run on questions involving abortion, *1272 child abuse, child support, and other controversial situations.
Hearing on S.B. 395 Before the Senate Finance Comm., 66th Leg. (Nev., May 30, 1991). Senator William Raggio also expressed concern over limiting a family court judge's jurisdiction, commenting as follows:
I just don't support this concept that [judges in family court] should be able to have jurisdiction for a limited purpose only in this area. I believe they should be district judges that sit in these departments, but when there is a calendar lag they should be available for other service.
Hearing on S.B. 395 Before the Finance Comm., 66th Leg. (Nev., June 12, 1991). Additionally, the following colloquy occurred during a legislative hearing on the issue of electing judges to the family court:
[SENATOR GLOMB:] Just for clarification, this means they would not specifically run as a family-court judge, but as a district court judge, and would rotate into that position.
....
[SENATOR RAGGIO:] As I understand the bill, the judges will establish, within their judicial districts, family courts. It would be my understanding that these judges would run, with the understanding that they would be assigned to these family courts.
....
[SENATOR COFFIN:] As I can see it, there is nothing to prohibit judges running directly for that responsibility, though. As the motion reads, a person could run, and run on that platform of intending to serve as a family-court judge.
....
[SENATOR RAGGIO:] That would be their indication, but under the law would not be limited to serving only as family-court judges.
Id. The Legislature ultimately adopted S.B. 395, prescribing the jurisdiction of the family court, and resolved that the presiding judge in a district "may assign one or more judges of the district to act temporarily as judges of the family court." 1991 Nev. Stat., ch. 659, § 2, at 2174. In light of the legislative history surrounding NRS 3.223, I conclude that the Legislature intended the judges sitting in family court to be district court judges.

The Nevada Revised Statutes indicate family court judges are district court judges
Besides determining the original and exclusive jurisdiction of the family court, S.B. 395 also consistently amended other statutes that support our conclusion that the judges sitting in family court are district court judges. NRS 293.197(2)(a) requires election ballots for judges in the family division to use the words: "district court judge, family division, department ...," see 1991 Nev. Stat., ch. 659, § 24, at 2185, and similarly, the Legislature has determined that in districts with a family court division, a certain number of district court judges must be judges of the family court. See NRS 3.012, 3.018; see also 1991 Nev. Stat., ch. 659, §§ 6-7, at 2175-76. I conclude that only district court judges have the power to sit in the family court.

A district court judge sitting in family court retains his or her judicial power
I also dissent from the majority's conclusion that NRS 3.223 limits the constitutional power and authority granted under Article 6, Section 6(1) to a judge sitting in family court. Before discussing the original and exclusive jurisdiction of the family courts created by statute, we must distinguish between the court's subject matter jurisdiction and a judge's judicial power. Subject matter jurisdiction is "the court's authority to render a judgment in a particular category of case." J.C.W. ex. rel. Webb v. Wyciskalla, 275 S.W.3d 249, 253 (Mo.2009). However, "`[j]udicial [p]ower' is the authority to hear and determine justiciable controversies," Galloway v. Truesdell, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967), and also includes the power to make and enforce final decisions. Bergman v. Kearney, 241 F. 884, 898 (D.Nev. 1917). In Nevada, judicial power is derived directly from Article 6, Section 6(1) of the Nevada Constitution, empowering judges with the authority to act and determine justiciable controversies. Additionally, Section 6(1) also prescribes the jurisdiction of the district courts, but the subject matter jurisdiction *1273 of the family court has been reserved by legislative enactment under Section 6(2) and ultimately established by NRS 3.223.
NRS 3.223 details that the family court has original and exclusive jurisdiction over matters affecting the familial unit including divorce, custody, marriage contracts, community and separate property, child support, parental rights, guardianship, and adoption. However, the family court was constitutionally established as a "division of any district court," Nev. Const, art. 6, § 6(2), and the judges sitting in family court are district court judges whose power and authority are derived from the constitution and not created by statute. Even though the Legislature has specified cases that must be designated to the family court, my construct of judicial power derives from the Nevada Constitution and is not diminished by legislatively enacted jurisdictions. Therefore, because a district court judge is empowered with constitutional judicial power, his or her disposition, although outside the scope of the family court's jurisdiction, is authorized by the constitution.
This approach is confirmed by statutory analysis, review of previous Nevada caselaw, and authority from sister jurisdictions. All judges in Nevada must attend instructional courses "[i]n court procedure, recordkeeping and the elements of substantive law appropriate to a district court."[1] NRS 3.027. However, in jurisdictions with family courts, only family court judges must attend additional instructional courses "designed for the training of new judges of juvenile courts and family courts."[2] NRS 3.028(1). Thus, the Legislature's purpose is also clear when it limits assignment to hear family court matters to those judges who have obtained the necessary instruction. Certainly, by requiring additional instruction for judges sitting in family court, the Legislature intended not to limit the jurisdiction of the family court division but to specify the qualification and training necessary for a district court judge to preside in the family court. Contra NRS 3.0105(4) ("A district judge [temporarily] assigned to the family court ... for a period of 90 or more days must attend the instruction required [of a family court judge].").
As such, in addition to the training necessary to hear specialized matters of family law, a judge sitting in family court has all the constitutional powers and procedural and substantive instruction of a district judge. Notably, in jurisdictions that do not have family courts, district court judges attend training on issues of family law and preside over cases falling within the district court's general jurisdiction and proceedings that fall within what would be the exclusive jurisdiction of the family court. See NRS 3.028(2).
By creating a family court division, prescribing its jurisdiction, mandating the number of district court judges who must be judges of the family court, and requiring specialized instruction and training, the Legislature did not restrict the judicial powers of a district court judge sitting in the family court division. Indeed, it would not have the constitutional authority to do so. Rather, the Legislature has recognized that district court judges sitting in the family court have expanded authority to hear family court disputes by virtue of their specialized training.
Accordingly, a family court does not lose its jurisdiction merely because a district court judge not formally assigned to the family court is temporarily assigned to the family court. See NRS 3.0105. Likewise, if a case is improperly filed or assigned to the family court, it is incorrect to say that the family court does not have jurisdiction because the judge sitting in the family court lacks subject matter jurisdiction. Rather, both the majority and I conclude that such a judge is a *1274 district court judge sitting in the family court division. However, I depart from the majority and hold that because a family court judge has the same constitutional power and authority as a district court judge, a family court judge has the authority to preside over a case improperly filed or assigned to the family court division.
Our precedent supports the conclusion I reach today. In Mainor v. Nault, we distinguished a district court judge's jurisdiction to decide matters in the district court from a family court judge's jurisdiction to decide matters in the family court. 120 Nev. 750, 760, 101 P.3d 308, 315 (2004). We concluded that by enacting legislation granting concurrent and coextensive jurisdiction to district court judges, the Legislature intended to allow judges to hear cases in other districts, but not to allow district court judges concurrent and coextensive jurisdiction over cases reserved to the family court. Id.; see NRS 3.220. To that end, this court explained that "the Legislature, by creating family courts and giving them exclusive original jurisdiction over certain matters, removed oversight of [proceedings expressly set forth in NRS 3.223] from the district court's jurisdiction in jurisdictions that have separate family courts." Id. Conversely, however, the Legislature did not revoke the power of a judge sitting in family court to hear proceedings that lie outside the family court's jurisdiction, because a judge sitting in the family court has the constitutional powers of a district judge.
This concept is reflected, in part, in our holding in Barelli v. Barelli, where we considered whether the Legislature's grant of limited and exclusive jurisdiction to the family court prohibits the family court from adjudicating matters outside its exclusive jurisdiction but related to its jurisdictional authority. 113 Nev. 873, 877, 944 P.2d 246, 248 (1997). Barelli concerned an unmarried couple involved in a strictly contractual dispute, the resolution of which had the potential to revive claims for alimony and community property. Id. at 878, 944 P.2d at 249. We concluded that the family court had jurisdiction "to resolve issues that fall outside [its] jurisdiction when necessary for the resolution of those claims over which jurisdiction is properly exercised." Id. To that end, our holding in Barelli recognized that a judge sitting in family court had the constitutional power to resolve a case and supplemental jurisdiction over other issues in the case.
Additionally, authority from sister jurisdictions relied on by my colleagues in the majority is based on statutes and constitutional constructs that differ from Nevada. Unlike Nevada, the family courts in these sister states are created either by statute or by the constitution, and the family court judges' judicial powers are limited and distinguishable from the judicial powers of a general jurisdiction district court judge. See Del.Code Ann. tit. 10, § 925 (2009) (detailing the general jurisdiction of both the family court and the family court judge); N.Y. Fam. Ct. Act §§ 151-158 (McKinney 2009) (granting the general powers of the family court and the family court judges); N.Y. Fam. Ct. Act § 141 (McKinney 2009) (requiring special legal training for the "office of family court judge"); N.Y. Const, art. 6, § 13 (establishing the family court and appointment or election of family court judges); N.Y. Const, art. 6, § 20 (specifying the qualification for judicial office and distinguishing between "[a] judge of the court of appeals, justice of the supreme court, judge of the court of claims, judge of a county court, judge of the surrogate's court, judge of the family court or judge of a court for the city of New York"); R.I. Gen. Laws § 8-10-3 (2009) ("There is hereby established a family court, consisting of a chief judge and eleven (11) associate justices, to hear and determine all petitions for divorce....").
Furthermore, a district court judge sitting in another court does not lose his or her judicial power. The California Court of Appeals stated that "when a judge [of the district court] sits as a judge of the juvenile court, he is sitting as a judge of the [district] court, exercising a part of the general jurisdiction conferred by the law ..., and is referred to as a judge of the juvenile court." Singer v. Bogen, 147 Cal.App.2d 515, 305 P.2d 893, 899 (1957).
*1275 I therefore conclude that in Nevada, a judge sitting in the family division is a district court judge who retains his or her judicial powers derived from the constitution to dispose of justiciable controversies.[3]

The family court abused its discretion regarding entry of default judgment
The majority concluded that the default judgment was void because the family court lacked jurisdiction to adjudicate the claim. Because I conclude that the district court judge had the constitutional power and authority to adjudicate this case, I would reach the issue of whether the district court abused its discretion when it refused to set aside the default and subsequently entered default judgment.
Landreth argues that the district court abused its discretion by failing to set aside the entry of default because Malik did not send a second notice of intent to file a default after granting Landreth extensions of time to file an answer. Therefore, Landreth argues that good cause existed to set aside the default under NRCP 55(c). This court reviews a lower court's decision to set aside an entry of default for an abuse of discretion. Sealed Unit Parts v. Alpha Gamma Ch., 99 Nev. 641, 643, 668 P.2d 288, 289 (1983), overruled on other grounds by Epstein v. Epstein, 113 Nev. 1401, 1405, 950 P.2d 771, 773 (1997); Kahn v. Orme, 108 Nev. 510, 513, 835 P.2d 790, 792 (1992).
Under NRCP 55, a court may enter judgment by default against a party who has failed to defend a civil action. Where a party against whom default judgment is sought has appeared in the action, NRCP 55(b)(2) requires the applying party to satisfy heightened notice standards. Specifically, the rule requires that the party against whom judgment by default is sought must be served "with written notice of the application for judgment at least 3 days prior to the hearing on such application." NRCP 55(b)(2). Under this rule, one 3-day notice of intent to file a default is generally sufficient, unless the applying party has granted subsequent extensions in which case the applying party would be required to provide subsequent notice under NRCP 55(b)(2). I conclude that a court abuses its discretion by entering default judgment where the applying party did not properly serve notice of its intent to take default.
In this case, despite numerous verbal and written extensions of time to file an answer, Malik served Landreth with a notice of intent to file a default on December 14, 2006. According to Landreth, Malik nevertheless granted her additional extensions of time to answer the complaint. But without providing a subsequent 3-day notice pursuant to NRCP 55(b)(2), Malik filed a default on February 27, 2007. Thereafter, Landreth filed a motion to set aside the default pursuant to NRCP 55(c).
The family court denied Landreth's motion to set aside the default and entered default judgment against Landreth, finding that Malik had offered Landreth numerous opportunities to answer but that her delay warranted the entry of default. However, in its order, the court did not discuss whether Landreth received proper notice under NRCP 55(b)(2). Although it is undisputed that Malik first served Landreth with notice on December 14, 2006, the court failed to discuss whether additional extensions of time were granted after the initial December 14 notice, and whether, in consideration of these extensions, Landreth was entitled to a subsequent 3-day notice of Malik's intent to file a default. In addition, the district court did not address Malik's attorney's duties under Rowland v. Lepire, 95 Nev. 639, 640, 600 P.2d 237, 237-38 (1979), and RPC 3.5A (formerly SCR 175), which provides, "[w]hen a lawyer knows ... the identity of a lawyer representing an opposing party, he or she should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed." In the absence of findings and resolution of these issues, this court cannot properly review the district court's entry of default judgment.
*1276 Therefore, I conclude that the district court abused its discretion by denying Landreth's motion to set aside the default under NRCP 55(c) without making findings regarding the impact of the grant of extensions after Malik provided the initial 3-day notice pursuant to NRCP 55(b)(2), and whether Malik was required to serve notice a second time before filing a default. Therefore, I would remand the case to the district court with instructions for the court to consider whether Landreth was granted subsequent time extensions after the initial 3-day notice, whether Landreth was entitled to a second notice of Malik's intent to file a default, and whether the absence of such notice constituted good cause to set aside the default.

CONCLUSION
Accordingly, because I conclude that a family court judge maintains all the constitutional powers of a district court judge, I would hold that the family court judge did not lack judicial power or authority to consider the substantive and procedural aspects of Malik's complaint and enter judgment in this case. Nonetheless, I would reverse the district court's denial of Landreth's motion to set aside the default, and remand the case to the district court with instructions for the court to consider and make findings of whether subsequent extensions were granted to Landreth after the initial notice of intent to file a default, whether Landreth was entitled to a second 3-day notice under NRCP 55(b)(2), and whether the absence of such notice constituted good cause to set aside the default.
We concur: SAITTA and GIBBONS, JJ.
NOTES
[1] EDCR 5.02(a) provides, in pertinent part, "[i]n any contested action for ... partition based upon a meretricious relationship, ... the court must, upon demand of either party, direct that the trial or hearing(s) on any issue(s) of fact joined therein be private."
[2] Our holding today does not interfere with Eighth Judicial District Court Rules or Washoe County District Court Rules that provide for the selection of judges to preside over specialty courts.
[1] District court judges, other than family court judges, must attend instructional courses within 12 months after taking office, while family court judges must attend instructional courses within 24 months after taking office. See NRS 3.027(1)(a), (b). Family court judges are required to attend the same instructional courses as the district court judges under NRS 3.027(1), but are allotted more time in order accommodate their court calendars and additional required courses. See Hearings on S.B. 394 Before the Senate Judiciary Comm., 68th Leg. (Nev., May 4, 1995, and June 6, 1995).
[2] In judicial districts that do not have family courts, district judges must also attend instruction "in a course designed for the training of new judges of juvenile courts and family courts." NRS 3.028(2).
[3] Local rules would serve to prevent litigants from purposefully filing in family court where their claims have no arguable relation to the proceedings set forth in NRS 3.223. See EDCR 1.11, 1.60(h); WDFCR 30(1)(f)(2), 37.