*875
 
 OPINION
 

 Per Curiam:
 

 FACTUAL BACKGROUND
 

 Madeline and Dr. Anthony Barelli were divorced on September 23, 1988. Up until the divorce, Madeline worked as an office manager for Anthony at Anthony’s medical practice, Anthony E. Barelli, M.D. Ph.D., Ltd.
 
 [1]
 
 (hereinafter “the practice”), and at Medical Intelcom.
 
 [2]
 
 Her salary was approximately $30,000 per year.
 

 Just before the divorce, Madeline claims she and Anthony entered into an unwritten “side agreement” where she would continue working for him in lieu of receiving alimony. Madeline claims that she agreed because she had minimal skills and was completely unable to obtain employment on her own.
 
 [3]
 
 She also claims that this “side agreement” obligated Anthony to pay her $30,000 per year plus health benefits for the rest of her life.
 

 Anthony’s attorneys drafted a property settlement agreement providing that Madeline was and would continue to be self-supporting and that no spousal support was warranted. This agreement, which was signed by Madeline and Anthony, was not merged into the divorce decree. Neither the property settlement agreement nor the decree of divorce mentioned that Madeline was to retain her position with the practice or Medical Intelcom.
 

 
 *876
 
 At the time she signed the property settlement agreement, Madeline was represented by attorney George Dickerson. Dickerson claims that he did not write the agreement, but did review it. He testified that he objected strongly to the fact that Madeline was to waive alimony and accept only $300,000 as a valuation of the entire community property under the agreement. Dickerson specifically objected in light of his opinion that Madeline was entitled to $400,000 in alimony alone. Madeline signed the agreement over Dickerson’s objections.
 

 Dickerson testified that, in his opinion, Madeline was competent at the time she executed the agreement. He also testified that he explained to her that the decree of divorce could not be modified to alter the provisions in the agreement because the agreement would not merge into the decree, to which she stated that she understood.
 

 Anthony denied making an arrangement with Madeline • whereby she would keep her job indefinitely. Further, he testified that he believed Madeline was self-supporting because she told him that she could obtain work. He claimed that, at the time of the divorce, he took Madeline off the payroll because “she didn’t show up.” Anthony testified that Madeline did not ask him for a job or about her job until the month that he stopped paying the lease on her Jaguar automobile in 1992. He also claimed that Madeline resigned as officer and director in his corporations at the time of the divorce.
 

 Madeline testified in the proceedings below that, after the divorce, they decided that she should take a leave of absence because it was too difficult for them to work together. She went on to claim that Anthony obtained interim employment for her with a radio station. Anthony denied this assertion. She also alleged she kept in contact with Anthony, who continually refused to rehire her until a later date. Madeline also knew that Anthony discontinued her health insurance, but claims he told her he would make it up to her when business improved.
 

 Madeline consulted Dickerson again in 1990 when she found that Anthony had sold Medical Intelcom. When Madeline called him regarding her right to be employed by Anthony for the rest of her life, Dickerson told her that he was unable to represent her in any capacity because she failed to follow his advice.
 

 On November 23, 1992, Madeline filed a complaint in a district court of general jurisdiction, alleging that Anthony fraudulently induced her to waive alimony in return for lifetime employment with his medical practice. She asked the district court to reform the property settlement agreement so that she
 
 *877
 
 could receive monthly alimony and an additional $250,000 in community property.
 
 [4]
 
 In the alternative, she asked the court for damages under their oral employment contract. After the family court was established, the case was transferred there, and despite renewed challenges to jurisdiction, the family court judge retained jurisdiction.
 

 The family court, sitting without a jury, determined that there was no contract between the parties that guaranteed Madeline indefinite employment in exchange for waiving alimony. It also denied reformation. This appeal followed.
 

 DISCUSSION
 

 Subject Matter Jurisdiction
 

 Claiming that this case involves a purely contractual dispute between two unmarried people, Madeline argues that the family division of the district court acted in excess of its subject matter jurisdiction. We disagree.
 

 Article 6, section 6(2)(b) of the Nevada Constitution provides that the legislature may establish a family court as a division of any district court and may prescribe its jurisdiction. In 1993, the legislature provided that “the family court has original, exclusive jurisdiction” in any proceeding brought pursuant to chapters 62, 123, 125, 125A, 125B, 126, 127, 128, 129, 130, 159, 425 or 432B of NRS. NRS 3.223(1)(a). While the grant of jurisdiction to the family court in the above listed matters is exclusive, we do not believe that the legislature intended to prohibit the family court from adjudicating matters related to its jurisdictional authority.
 

 
 *878
 
 Although the property settlement agreement in this case cannot be modified under NRS 125.150(6),
 
 [5]
 
 Madeline has filed an action to reform (or, by seeking alimony, to rescind) the agreement. We hold that actions regarding the resolution of the marriage filed independent of the divorce proceeding to reform or rescind unmerged property settlements fall within the jurisdiction of the family court pursuant to article 6, section 6(2)(b) of the Nevada Constitution, and NRS 3.223(1)(a).
 

 Even though Madeline brought a separate claim for contractual damages, the resolution of whether the property settlement agreement could be reformed or rescinded based on allegations of fraud was dependent on the resolution of whether, in fact, there was a contract
 
 ab initio
 
 (the oral side agreement). Therefore, because the reformation/rescission claim was dependent upon the existence of the oral contract, and because a favorable ruling on the reformation/rescission had a potential for resurrecting claims for alimony and community property, the family court also had jurisdiction to adjudicate its existence.
 

 In holding that the family division of the district court has such jurisdiction, we do not intend to suggest that a district court of general jurisdiction would be without power to fully resolve these issues if brought before it. Instead, we hold that both the family and the general divisions of the district court have the power to resolve issues that fall outside their jurisdiction when necessary for the resolution of those claims over which jurisdiction is properly exercised. For example, the family court has jurisdiction to reach a reformation or recision claim where family law issues are implicated; and a district court of general jurisdiction has authority to reach a family law issue where necessary to resolve a claim that would ordinarily fall within its jurisdiction, such as reformation or rescission.
 

 Right to a Jury Trial
 

 Next, Madeline claims that she was erroneously deprived of a
 
 *879
 
 jury trial on her claim for contract damages. NRS 125.070 provides that “[t]he judge of the court shall determine all questions of law and fact arising in any divorce proceeding under the provisions of this chapter.”
 

 The court granted Anthony’s motion to strike Madeline’s demand for a jury trial because the contractual claim arose out of the marital relationship, and the right to a trial by jury is eliminated in domestic proceedings. Madeline argues that this is not a domestic proceeding, but rather an action seeking money damages for breach of contract and fraud.
 

 Again, we agree with the district court that this is an action attempting to resolve the marriage because it attempts to rescind the marital agreement between the parties and award alimony and community property under NRS chapter 125. Further, because resolution of the reformation or rescission issue was dependent upon whether the existence of the oral contract had been proved, the family court’s determination that no contract existed barred the damage claim. Therefore, under NRS 125.070, Madeline was not entitled to a jury trial on either cause of action.
 

 Motion to Dismiss Pursuant NRCP 41 (b)
 

 At the close of evidence, Anthony’s counsel moved to dismiss the case under NRCP 41(b).
 
 [6]
 
 The trial judge found that there was no oral contract. Accordingly, she ordered that “Defendant’s Motion to Dismiss the First Cause of Action to reform the Property Settlement Agreement as it relates to alimony is granted and the N.R.C.P. 41(b) Motion to Dismiss is granted with prejudice.” Madeline claims the district court erroneously dismissed the cause of action.
 

 NRCP 41(b) provides:
 

 After the plaintiff has completed the presentation of his evidence, the defendant, . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the court or jury. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits.
 

 In reviewing a motion to dismiss pursuant to NRCP 41(b),
 

 “the plaintiff’s evidence must be accepted as true . . . [and] this court must draw all permissible inferences in his favor
 
 *880
 
 and not pass upon the credibility of the witnesses nor weigh the evidence,” ... it is equally true that the plaintiff must present a
 
 prima facie
 
 case upon which the triers of fact can grant relief.
 

 Griffin v. Rockwell International, Inc., 96 Nev. 910, 911, 620 P.2d 862, 863 (1980) (quoting Bates v. Cottonwood Cove Corp., 84 Nev. 388, 391, 441 P.2d 622, 624 (1968)) (citations omitted). Thus, the court is “bound to disregard any contradictory evidence presented by the defense during the case-in-chief, whether by cross-examination or by direct testimony of a defense witness.” Warner v. Dillon, 92 Nev. 677, 679, 558 P.2d 540, 541 (1976).
 

 Madeline asked the district court to reform the property settlement agreement because Anthony fraudulently induced her to waive alimony. She claims that at the time they entered into the contract, Anthony did not intend to give her lifetime employment. Because the district court found that the parties did not enter into an oral agreement, a finding of fraud was necessarily precluded. Thus, the property settlement agreement could not have been rescinded on that basis.
 

 “Where the trial court, sitting without a jury, makes a determination predicated upon conflicting evidence, that determination will not be disturbed on appeal where supported by substantial evidence.” Trident Construction v. West Electric, 105 Nev. 423, 427, 776 P.2d 1239, 1242 (1989). Therefore, the district court’s finding that the parties did not enter into an oral agreement will not be set aside if predicated upon conflicting evidence. Here, because the trial court was the finder of fact and all of the evidence had been presented, the court had the discretion to make a finding that no side agreement existed in aid of the resolution of the reformation/rescission claim. This is so even in the context of this 41(b) motion because no further evidence was taken.
 
 [7]
 

 In this case, Madeline testified that there was an oral agreement and Anthony testified that there was not. While Madeline produced a one-sentence letter signed by Anthony, dated September 26, 1988, stating that Madeline is “currently and will continue
 
 *881
 
 on into the future as a salaried employee of this company at the same rate of pay and position,” the letter was devoid of any reference to an obligation to Madeline and cannot be considered a contract. Therefore, the letter was merely conflicting evidence to be weighed by the trial court.
 

 Because there is conflicting evidence in the record regarding whether there was an oral agreement, we will not disturb the district court’s finding that none existed. Therefore, the district court did not err in dismissing the reformation/rescission claim pursuant to NRCP 41(b) because, in the absence of a contract, Madeline cannot set forth a prima facie case of fraud.
 

 In conclusion, we hold that the district court properly heard the case without a jury and properly dismissed the reformation/ rescission action under NRCP 41(b) in light of its finding that the parties did not enter into an oral agreement. Accordingly, we affirm.
 

 [1]
 

 Anthony E. Barelli, M.D. Ph.D., Ltd., is now known as A.E. Barelli, M.D., Ltd., because Anthony does not have a Ph.D.
 

 [2]
 

 Medical Intelcom is a corporation formed by Anthony for research and development.
 

 [3]
 

 Madeline quit working for Anthony after the divorce. Thereafter, she held two jobs, but claims that those positions were not indicative of her ability to secure employment because Anthony obtained the first job for her, and because the second was a “phoney job" at her boyfriend’s business.
 

 [4]
 

 In the complaint Madeline claims that she “is entitled to reformation of said property settlement agreement and properly awarded alimony in the sum of $5,000 monthly, and $250,000 reimbursement.” The purpose of an action for reformation of a written instrument is not to make a new agreement for the parties, but rather, its purpose is to establish and perpetuate the actual agreement based upon the true intent of the parties. Meyer v. Young, 159 P.2d 908, 911 (Wash. 1945). Reformation will not lie to make a new contract for the parties. Krick v. Thompson, 162 S.W.2d 240, 245 (Mo. 1942).
 

 In this case, Madeline stated in her complaint that “[t]he true intent of the parties was that plaintiff [be] self-supporting . . . .” Because an action in reformation would be restricted by definition to a rewriting of the property settlement agreement to somehow express that intent, and because alimony and additional distributions of community property were not originally intended by either party, Madeline’s action technically lies in rescission. Only if the agreement were rescinded, would the district court have the discretion to award alimony and additional community property under NRS chapter 125. (Although an award of alimony and additional distributions of property might facilitate her goal of self-support, these devices were clearly not intended by either Madeline or Anthony when the divorce was originally finalized.)
 

 [5]
 

 NRS 125.150(6) provides:
 

 If the . . . agreement by the parties settling their property rights has been approved by the court, whether or not the court has retained jurisdiction to modify them, the adjudication of property rights, and the agreements settling property rights, may nevertheless at any time thereafter be modified by the court upon written stipulation signed and acknowledged by the parties to the action, and in accordance with the terms thereof.
 

 [6]
 

 The defense called no witnesses. The motion was made just prior to closing argument.
 

 [7]
 

 Technically, a ruling under NRCP 41(b) was improper because resolution of whether a contract existed involved the weighing of evidence.
 
 Cf.
 
 FRCP 41(b). However, because the evidentiary phase of the trial was closed, this was harmless error.