## DLYNN LANDRETH, Appellant, *v.*
## AMIT MALIK, Respondent.

No. 49732

May 12, 2011                                 251 P.3d 163

*Hansen Rasmussen, LLC,* and *Jonathan J. Hansen*, Las Vegas, for Appellant.

*Robert W. Lueck*, Las Vegas, for Respondent.

*Kathleen T. Breckenridge*, Reno, for Amicus Curiae Family Law Section of Nevada State Bar.

*Lemons, Grundy & Eisenberg* and *Robert Eisenberg*, Reno, for Amicus Curiae Nevada District Court Judges' Association.

Before the Court EN BANC.

# OPINION

By the Court, HARDESTY, J.:

On December 24, 2009, this court issued an opinion in this appeal vacating the district court's default judgment for respondent Amit Malik. Thereafter, Malik filed a petition for rehearing pursuant to NRAP 40. We granted rehearing on July 22, 2010, and we now withdraw our December 24, 2009, opinion, and issue this opinion in its place.

In this appeal we consider two issues. First, we consider whether the Legislature has the constitutional authority to limit the powers of a district court judge in the family court division of a judicial district. We conclude that it does not. Article 6, Section 6(1) of the Nevada Constitution grants original and appellate jurisdiction to the district courts in the judicial districts of the state. Article 6, Section 6(2) permits the Legislature to establish a family court as a division of any judicial district and to prescribe its jurisdiction. Pursuant to the Constitution's grant of this authority, the Legislature established a family court division in the Second and Eighth Judicial Districts and limited the family courts' jurisdiction to matters specifically enumerated in NRS 3.223. However, all judges in the family court division are district court judges with authority to preside over matters outside the family court division's jurisdiction.[1]

This appeal involves an unmarried, childless couple, who previously lived together and now dispute the ownership of certain property. Although NRS 3.223 does not give the family court division jurisdiction over such matters, the Legislature does not have the constitutional authority to limit the constitutional powers of a district court judge in the family court division. Therefore, we hold that the district court judge sitting in family court did not lack the power and authority to dispose of this case merely because it involved a subject matter outside the scope of NRS 3.223.

Second, we must determine whether the district court abused its discretion when it denied appellant Dlynn Landreth's motion to set aside the default without considering whether Malik gave a proper notice of intent to take a default. A party is required to inquire into the opposing party's intent to proceed before requesting a default under this court's holding in *Rowland v. Lepire*, 95 Nev. 639, 600 P.2d 237 (1979), and Rule of Professional Conduct (RPC) 3.5A. Generally, one notice of an intent to request a default is sufficient

---

[1] In dissenting, CHIEF JUSTICE DOUGLAS, with whom JUSTICE PICKERING concurs, agrees with this proposition provided the family court judge is first reassigned to a division other than the family court.

for purposes of *Rowland* and RPC 3.5A. If, however, the party applying for a default grants subsequent time extensions, that party must also provide a subsequent notice of his or her intent to seek a default. Thus, we conclude that the district court abused its discretion when it denied Landreth's motion to set aside the default when Malik admitted to granting further time extensions without subsequently serving Landreth with another notice of intent to request a default.

## FACTS

Landreth and Malik met in July 2001 and lived together in Arizona, Texas, and Florida from 2001 until 2004 when, according to Landreth, she decided to end the relationship and move to Las Vegas. The parties never married and did not have children together.

Landreth asserts that she acquired a residence after she arrived in Las Vegas using her own money for the down payment and to make upgrades and improvements to the home. Landreth acknowledges that the couple briefly reunited when Malik moved to Las Vegas, but maintains that in September 2005 the relationship ended.

According to Malik, however, the decision to move to Las Vegas was mutual, with Landreth moving first. Malik contends that the $80,000 down payment used to purchase the home originated from the couple's joint checking account and that the $50,000 used to renovate the home was also drawn from that account.

In September 2006, Malik filed an action in the Eighth Judicial District Court's Family Court Division seeking half of the equity in the real property, half of certain personal property acquired during the relationship, and all of his separate personal property. Landreth was served with the complaint on October 4, 2006. She hired counsel to represent her, but she contends that she had difficulty communicating with her counsel because she was living in the Caribbean at the time.

During October and November, Malik granted Landreth numerous extensions of time to file an answer. Although no default had been entered, on December 14, 2006, Malik served Landreth with a notice of intent to apply for a default judgment. Landreth maintains that notwithstanding the notice of intent to apply for a default judgment, Malik thereafter granted her additional extensions of time to answer the complaint. Landreth contends that a letter from her counsel to Malik's counsel documented yet another oral agreement to extend time beyond December 19, 2006. However, on February 27, 2007, Malik requested, and the clerk entered, a default. Landreth filed her answer and a counterclaim on

March 5, 2007. Malik served Landreth with a notice of default hearing on March 22, 2007. Subsequently, Landreth filed a motion to set aside the default. In the motion, Landreth asserted that Malik's counsel violated RPC 3.5A by failing to notify Landreth's counsel of his application for a default after Malik had granted Landreth more time to file her answer.

On May 18, 2007, the family court denied Landreth's motion to set aside the default, finding that Malik had offered Landreth numerous opportunities to answer, but that her delay warranted the entry of a default judgment. Thus, the court entered default judgment against Landreth. In upholding the entry of default, however, the district court failed to address Landreth's contention that Malik had granted her subsequent time extensions after giving her the notice of intent to take default.

In the default judgment, the family court judge concluded that the down payment was drawn from the couple's joint checking account. Therefore, the court found that Malik was co-owner of the Las Vegas home and was the owner or co-owner of other personal property located within the residence. Landreth appeals.

## DISCUSSION

On appeal, Landreth claims for the first time that the family court lacked subject matter jurisdiction to hear Malik's case under Nevada Constitution Article 6, Section 6(2) because his case did not fit within those matters subject to the family court's jurisdiction under NRS 3.223. Specifically, Landreth argues that because the parties were not married, did not have children, and the litigation was limited to a dispute between two unmarried persons over the title and ownership of property, the family court lacked jurisdiction to hear the case. Malik counters that because the parties maintained a meretricious relationship, the family court properly exercised jurisdiction over the case pursuant to Eighth Judicial District Court Rule (EDCR) 5.02(a) and this court's precedent. We conclude that the family court judge did not lack the authority to resolve this case merely because it involved a subject matter outside NRS 3.223's scope.

As an initial matter, whether a court lacks subject matter jurisdiction "can be raised by the parties at any time, or sua sponte by a court of review, and cannot be conferred by the parties." *Swan v. Swan*, 106 Nev. 464, 469, 796 P.2d 221, 224 (1990). However, if the district court lacks subject matter jurisdiction, the judgment is rendered void. *State Indus. Ins. System v. Sleeper*, 100 Nev. 267, 269, 679 P.2d 1273, 1274 (1984). We therefore address Lan-

dreth's subject matter jurisdiction argument, which requires that we review Article 6, Section 6 of the Nevada Constitution and interpret NRS 3.223.

*Article 6, Sections 6(1) and 6(2) are ambiguous*

To resolve whether the district judge sitting in the family court lacked authority to adjudicate Malik's case requires that we interpret Article 6, Section 6 of the Nevada Constitution. Constitutional interpretation utilizes the same rules and procedures as statutory interpretation. *We the People Nevada v. Secretary of State*, 124 Nev. 874, 881, 192 P.3d 1166, 1170 (2008). We will apply the plain meaning of a statute unless it is ambiguous, "meaning that it is susceptible to 'two or more reasonable but inconsistent interpretations.'" *Secretary of State v. Burk*, 124 Nev. 579, 590, 188 P.3d 1112, 1120 (2008) (quoting *Gallagher v. City of Las Vegas*, 114 Nev. 595, 599, 959 P.2d 519, 521 (1998)). If the constitutional provision is ambiguous, we look to the history, public policy, and reason for the provision. *Id.* Additionally, "the interpretation of a . . . constitutional provision will be harmonized with other statutes." *We the People Nevada*, 124 Nev. at 881, 192 P.3d at 1171.

We conclude that Article 6, Section 6 is ambiguous because it is susceptible to two or more reasonable interpretations. Together, Sections 6(1) and 6(2) may be reasonably interpreted to grant the Legislature the authority to establish family courts and either: (1) as Landreth argues, allow the Legislature to set limits on the subject matter jurisdiction of the family court and thus restrain the power and authority of the judge sitting in the family court division; or (2) as Malik argues, grant judges sitting in the family court division the same constitutional power and authority as other district court judges, including the power to adjudicate cases outside of the matters listed in NRS 3.223. Because both interpretations are reasonable but inconsistent, we conclude that Article 6 is ambiguous. Accordingly, we turn to the constitutional provisions' history and harmonize it with statutes enacted under them.

*Family court judges are district court judges sitting in the family court division*

We conclude that the Legislature has the constitutional authority to create a family court division of any district court and prescribe its jurisdiction; however, the Legislature does not have the constitutional authority to limit the constitutional powers of a district court judge sitting in the family court division. Therefore, we hold that the district court judge sitting in the family court division

did not lack the power and authority to dispose of this case merely because it involved a subject matter outside the scope of NRS 3.223.[2]

### Senate Joint Resolution 24

Senate Joint Resolution (S.J. Res.) 24, proposing an amendment to the Nevada Constitution to authorize the establishment of a family court division of the district court, was introduced in the 1987 and 1989 legislative sessions and was ultimately approved and ratified by the voters. *See* S.J. Res. 24, 64th Leg. (Nev. 1987); 1987 Nev. Stat., file no. 131, at 2444; S.J. Res. 24, 65th Leg. (Nev. 1989); 1989 Nev. Stat., file no. 26, at 2222. Although the legislative history of S.J. Res. 24 suggests that the primary focus was on the need to establish a family court division, it appears that the Legislature intended that the judge of a family court would be a district court judge " 'equal to all of the other district judges to hear just those domestic matters.' " Hearing on S.J. Res. 24 Before the Senate Judiciary Comm., 65th Leg. (Nev., Jan. 24, 1989) (quoting Senator Sue Wagner). Additionally, the explanation for the 1990 ballot question, authorizing the constitutional amendment and permitting the Legislature to establish a family court, provided that "[t]he *district judge* of this court would specialize in domestic matters." Nevada Ballot Questions 1990, Nevada Secretary of State, Question No. 1 (emphasis added). According to the hearings conducted to establish a family court division under S.J. Res. 24, it is apparent that the Legislature intended that the judges sitting in the family court division would be district court judges and retain the same constitutional powers.

### Legislative history of NRS 3.223

NRS 3.223 establishes the original and exclusive jurisdiction of the family court division, along with cases in which the family court may have concurrent jurisdiction. NRS 3.223 was conceived from two bills introduced during the 1991 legislative session, As-

---

[2]The dissenting justices inaccurately characterize our holding as, in essence, declaring NRS 3.223 unconstitutional. This is simply not the case. Rather, our opinion holds that the statutory language establishing the matters that the family court may hear does not limit the constitutional powers given to a district court judge to decide all cases and controversies under Article 6, Section 6 of the Nevada Constitution *See Strickland v. Waymire*, 126 Nev. 230, 241, 235 P.3d 605, 613 (2010) (" 'The constitution may not be construed according to a statute enacted pursuant thereto; rather, statutes must be construed consistent with the constitution.' " (quoting *Foley v. Kennedy*, 110 Nev. 1295, 1300, 885 P.2d 583, 586 (1994))).

The Nevada Constitution was amended to create a family court with district court judges that would be required to have special training, education, and expertise in family matters. Our harmonization of the constitutional language at issue does not defeat or hinder that purpose.

sembly Bill (A.B.) 278 and Senate Bill (S.B.) 395. *See* A.B. 278, 66th Leg. (Nev. 1991); S.B. 395, 66th Leg. (Nev. 1991). Though similar, the bills contained two material differences: first, A.B. 278 asked for more judges than did S.B. 395; and second, A.B. 278 called for a direct election of family court judges, whereas S.B. 395 allowed for the election of district court judges who would then be assigned to or rotated into the family court division. Hearing on A.B. 278 Before the Assembly Judiciary Comm., 66th Leg. (Nev., May 8, 1991) (testimony of Senator Dina Titus). At a hearing on S.B. 395, Senator Dina Titus testified regarding one of the material differences in the bills that:

> [t]he senate follows a model used in Clark County now, wherein an individual would run as a district court judge, and every 2 years that individual rotates into the position of family court judge. It was felt by the senate committee that running for a family court judge, rather than district court judge would place a tremendous political burden on individuals who stand for election, based on the sensitive cases involved with the family court system. Family matters would become political matters, and family court judges would have to run on questions involving abortion, child abuse, child support, and other controversial situations.

Hearing on S.B. 395 Before the Senate Finance Comm., 66th Leg. (Nev., May 30, 1991). Senator William Raggio also expressed concern over limiting a family court judge's jurisdiction, commenting as follows:

> I just don't support this concept that [judges in family court] should be able to have jurisdiction for a limited purpose only in this area. I believe they should be district judges that sit in these departments, but when there is a calendar lag they should be available for other service.

Hearing on S.B. 395 Before the Finance Comm., 66th Leg. (Nev., June 12, 1991). Additionally, the following colloquy occurred during a legislative hearing on the issue of electing judges to the family court:

> [SENATOR GLOMB:] Just for clarification, this means they would not specifically run as a family-court judge, but as a district court judge, and would rotate into that position.
>
> . . . .
>
> [SENATOR RAGGIO:] As I understand the bill, the judges will establish, within their judicial districts, family courts. It would be my understanding that these judges would run, with the understanding that they would be assigned to these family courts.
>
> . . . .

[SENATOR COFFIN:] As I can see it, there is nothing to prohibit judges running directly for that responsibility, though. As the motion reads, a person could run, and run on that platform of intending to serve as a family-court judge.

. . . .

[SENATOR RAGGIO:] That would be their indication, but under the law would not be limited to serving only as family-court judges.

*Id.* The Legislature ultimately adopted S.B. 395, prescribing the jurisdiction of the family court division, and resolved that the presiding judge in a district "may assign one or more judges of the district to act temporarily as judges of the family court." 1991 Nev. Stat., ch. 659, § 2, at 2174. In light of the legislative history surrounding NRS 3.223, we conclude that the Legislature intended that the judges sitting in the family court division are district court judges.

### *The Nevada Revised Statutes indicate that family court judges are district court judges*

Besides determining the original and exclusive jurisdiction of the family court, S.B. 395 also consistently amended other statutes that support our conclusion that the judges sitting in the family court division are district court judges. NRS 293.197(2)(a) requires election ballots for judges in the family division to use the words: "district court judge, family division, department," *see* 1991 Nev. Stat., ch. 659, § 24, at 2185, and similarly, the Legislature has determined that in districts with a family court division, a certain number of district court judges must be judges of the family court. *See* NRS 3.012, 3.018. Therefore, we conclude that only district court judges have power to sit in the family court.

### *A district court judge sitting in family court retains his or her judicial power*

NRS 3.223 does not limit the constitutional power and authority granted under Article 6, Section 6(1) to a district court judge sitting in the family court division. Before discussing the original and exclusive jurisdiction of the family court division created by statute, we must distinguish between the court's subject matter jurisdiction and a judge's judicial power. Subject matter jurisdiction is "the court's authority to render a judgment in a particular category of case." *J.C.W. ex. rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. 2009). However, " '[j]udicial [p]ower' is the authority to hear and determine justiciable controversies," *Galloway v. Truesdell*, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967), and also includes the power to make and enforce final decisions. *Bergman*

*v. Kearney*, 241 F. 884, 898 (D. Nev. 1917). In Nevada, judicial power is derived directly from Article 6, Section 6(1) of the Nevada Constitution, empowering judges with the authority to act and determine justiciable controversies. Additionally, Section 6(1) also prescribes the jurisdiction of the district courts, but the subject matter jurisdiction of the family court division has been reserved by legislative enactment under Section 6(2) and ultimately established by NRS 3.223.[3]

NRS 3.223 details that the family court division has original and exclusive jurisdiction over matters affecting the familial unit including divorce, custody, marriage contracts, community and separate property, child support, parental rights, guardianship, and adoption. However, the family court was constitutionally established as a "division of any district court," Nev. Const. art. 6, § 6(2), and the judges sitting in family court are district court judges whose power and authority are derived from the Constitution and not created statutorily. Even though the Legislature has specified cases that must be designated to the family court division, the construct of judicial power derives from the Nevada Constitution and is not diminished by legislatively enacted jurisdictions. Therefore, because a district court judge is empowered with constitutional judicial power, his or her disposition, although outside the scope of the family court's jurisdiction, is authorized by the Constitution.

---

[3]In this case we must determine whether a district court judge sitting in the family court division is authorized to decide matters beyond those listed in NRS 3.223. The dissenting justices conclude that judges assigned to family court cannot, but the dissenting justices' analysis is focused on where the case is filed rather than the authority of the district court judge to decide it. Nothing in the dissent's recitation of the history of the constitutional amendment provides support for their conclusion that a district court judge's power to decide cases and controversies is limited when the judge is sitting in the family court division. Rather, the legislative history they cite addresses only the issue of whether the Legislature could create a specialty court without a constitutional amendment. Nothing in that debate addressed any limitation on a district court judge's power to hear controversies set forth in Article 6, Section 6(1). The legislative history we cite demonstrates that the Legislature, in enacting NRS 3.223, did not intend to curtail the constitutionally provided judicial powers given to all district court judges to hear all controversies set forth in Article 6, Section 6(1) simply by virtue of the district court judge's assignment to the family court division. Instead, the purpose was to create a specialty court with specially trained judges. Two of the dissenting justices acknowledge as much, but would require a judge to be reassigned out of the family court division before he or she could use their full judicial powers.

JUSTICE CHERRY, in his separate dissent, concludes that the Legislature has the constitutional authority to render the judges assigned to the family division limited jurisdiction judges.

The collective conclusions of the dissents are not consistent with Nevada Constitution Article 6, Section 6(1)'s broad jurisdictional mandate that applies to all district court judges.

This approach is confirmed by statutory analysis, review of previous Nevada caselaw, and authority from sister jurisdictions. All judges in Nevada must attend instructional courses "[i]n court procedure, recordkeeping and the elements of substantive law appropriate to a district court."[4] NRS 3.027. However, in jurisdictions with a family court division, only family court judges must attend additional instructional courses "designed for the training of new judges of juvenile courts and family courts."[5] NRS 3.028(1). Thus, the Legislature's purpose is also clear when it limits assignment to hear family court matters to those judges who have obtained the necessary instruction. Certainly, by requiring additional instruction for judges sitting in the family court division, the Legislature intended not to limit the power and authority of the district court judge, but rather to specify the qualification and training necessary for a district court judge to preside in the family court division. *Contra* NRS 3.0105(4) ("A district judge [temporarily] assigned to the family court . . . for a period of 90 or more days must attend the instruction required [of a family court judge].").

As such, in addition to the training necessary to hear specialized matters of family law, a judge sitting in family court has all the constitutional powers and procedural and substantive instruction of a district judge. Notably, in jurisdictions that do not have family courts, district court judges attend training on issues of family law and preside over cases falling within the district court's general jurisdiction and proceedings that fall within what would be the exclusive jurisdiction of the family court. *See* NRS 3.028(2).

By creating a family court division, prescribing its jurisdiction, mandating the number of district court judges who must be judges of the family court, and requiring specialized instruction and training, the Legislature did not restrict the judicial powers of a district court judge sitting in the family court division. Indeed, it would not have the constitutional authority to do so. Instead, the Legislature has recognized that district court judges sitting in the family court division have expanded authority to hear family court disputes by virtue of their specialized training.

Our dissenting colleagues fret that our interpretation "leaves district court judges not assigned to the family court division with less

---

[4]District court judges, other than family court judges, must attend instructional courses within 12 months after taking office, while family court judges must attend instructional courses within 24 months after taking office. *See* NRS 3.027(1)(a), (b). Family court judges are required to attend the same instructional courses as the district court judges under NRS 3.027(1), but are allotted more time in order to accommodate their court calendars and additional required courses. *See* Hearings on S.B. 394 Before the Senate Judiciary Comm., 68th Leg. (Nev., May 4, 1995, and June 6, 1995).

[5]In judicial districts that do not have family courts, district judges must also attend instruction "in a course designed for the training of new judges of juvenile courts and family courts." NRS 3.028(2).

authority to hear cases than district court judges who are assigned to the family court division . . . ." Nothing in our interpretation of Article 6 constrains the general jurisdiction district court judges from sitting in the family court. The dissenting justices' concern ignores NRS 3.0105(2) and (3), which unequivocally allow general jurisdiction district court judges to sit in the family court division. The only limitation is that if the general jurisdiction district court judge is going to sit in the family court division for longer than 90 days, the judge "must attend the instruction required [of district court judges assigned to the family court division]." NRS 3.0105(4). This legislative limitation of a general jurisdiction district court judge's ability to sit in the family court division is permitted under the constitutional amendment enabling the Legislature to establish and prescribe the jurisdiction of a family court. Nev. Const. art. 6, § 6(2)(b).

Accordingly, because we hold that a district court judge in the family division has the same constitutional power and authority as any district court judge, a family court judge has the authority to preside over a case improperly filed or assigned to the family court division.[6]

Our precedent supports the conclusion we reach today. In *Mainor v. Nault*, we distinguished a district court judge's jurisdiction to decide matters in the district court from a family court judge's jurisdiction to decide matters in the family court. 120 Nev. 750, 760, 101 P.3d 308, 315 (2004). We concluded that by enacting legislation granting concurrent and coextensive jurisdiction to district court judges, the Legislature intended to allow judges to hear cases in other districts, but not to allow district court judges concurrent and coextensive jurisdiction over cases reserved to the family court. *Id.*; *see* NRS 3.220. To that end, this court explained that "the Legislature, by creating family courts and giving them exclusive original jurisdiction over certain matters, removed oversight of [proceedings expressly set forth in NRS 3.223] from the district court's jurisdiction in jurisdictions that have separate family courts." *Mainor*, 120 Nev. at 760, 101 P.3d at 315. Conversely, however, the Legislature could not revoke the power of a judge sitting in the family court division to hear proceedings that lie outside the family court's jurisdiction, because a judge sitting in the family court has the constitutional powers of a district judge.

This concept is reflected, in part, in our holding in *Barelli v. Barelli*, where we considered whether the Legislature's grant of

---

[6]This issue is not likely to arise often because local rules serve to prevent litigants from purposefully filing in family court when their claims have no arguable relation to the proceedings set forth in NRS 3.223. *See* EDCR 1.60(h); WDFCR 37. Additionally, the chief judge has the authority to reassign cases incorrectly filed in the family court division to a more appropriate venue. *See* EDCR 1.60; *see also* WDCR 2; NRS 3.025.

limited and exclusive jurisdiction to the family court prohibits the family court from adjudicating matters outside its exclusive jurisdiction but related to its jurisdictional authority. 113 Nev. 873, 877, 944 P.2d 246, 248 (1997). *Barelli* concerned an unmarried couple involved in a strictly contractual dispute, the resolution of which had the potential to revive claims for alimony and community property. *Id.* at 878, 944 P.2d at 249. We concluded that the family court had jurisdiction "to resolve issues that fall outside [its] jurisdiction when necessary for the resolution of those claims over which jurisdiction is properly exercised." *Id.* To that end, our holding in *Barelli* recognized that a judge sitting in the family court division had the constitutional power to resolve a case and supplemental jurisdiction over other issues in the case.

Additionally, sister jurisdictions that come to the opposite conclusion base their decisions on statutes and constitutional constructs that differ from Nevada. Unlike Nevada, the family courts in these sister states are created either by statute or by the constitution, and the family court judges' judicial powers are limited and distinguishable from the judicial powers of a general jurisdiction district court judge in those states. *See* Del. Code Ann. tit. 10, § 925 (2009) (detailing the general jurisdiction of both the family court and the family court judge); N.Y. Fam. Ct. Act §§ 151-158 (McKinney 2009) (granting the general powers of the family court and the family court judges); N.Y. Fam. Ct. Act § 141 (McKinney 2009) (requiring special legal training for the "office of family court judge"); N.Y. Const. art. 6, § 13 (establishing the family court and appointment or election of family court judges); N.Y. Const. art. 6, § 20 (specifying the qualification for judicial office and distinguishing between "[a] judge of the court of appeals, justice of the supreme court, judge of the court of claims, judge of a county court, judge of the surrogate's court, judge of the family court or judge of a court for the city of New York"); R.I. Gen. Laws § 8-10-3 (2009) ("There is hereby established a family court, consisting of a chief judge and eleven (11) associate justices, to hear and determine all petitions for divorce . . . .").

Furthermore, a district court judge sitting in another court does not lose his or her judicial power. The California Court of Appeal stated that "when a judge [of the district court] sits as a judge of the juvenile court, he is sitting as a judge of the [district] court, exercising a part of the general jurisdiction conferred by the law . . . , and is referred to as a judge of the juvenile court." *Singer v. Bogen*, 305 P.2d 893, 899 (Cal. Ct. App. 1957).

We therefore conclude that in Nevada, a judge sitting in the family division is a district court judge who retains his or her judicial

powers derived from the Constitution to dispose of justiciable controversies.

*The family court abused its discretion regarding entry of default judgment*

. Because we conclude that the district court judge had the constitutional power and authority to adjudicate this case, we must determine whether the district court abused its discretion when it refused to set aside the default and subsequently entered default judgment.

Landreth argues that the district court abused its discretion by failing to set aside the entry of default because Malik did not send a second notice of intent to file a default after granting Landreth extensions of time to file an answer. Therefore, Landreth argues that good cause existed to set aside the default under NRCP 55(c). Malik argues that there is no requirement that he provide subsequent notices, even if he granted additional time extensions after first giving notice. This court reviews a lower court's decision to set aside an entry of default for an abuse of discretion. *Sealed Unit Parts v. Alpha Gamma Ch.*, 99 Nev. 641, 643, 668 P.2d 288, 289 (1983), *overruled on other grounds by Epstein v. Epstein*, 113 Nev. 1401, 1405, 950 P.2d 771, 773 (1997); *Kahn v. Orme*, 108 Nev. 510, 513, 835 P.2d 790, 792 (1992).

*Notice requirements for default and default judgment*

First, we distinguish between the notice requirements for an entry of default, which is set forth in RPC 3.5A and *Rowland v. Lepire*, 95 Nev. 639, 600 P.2d 237 (1979), and that for the entry of a default judgment, which is set forth in NRCP 55(b)(2), as the differing requirements were conflated by the parties in this case. RPC 3.5A states that a lawyer who "knows . . . the identity of a lawyer representing an opposing party . . . should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed." *See also Rowland*, 95 Nev. at 640, 600 P.2d at 237-38. Inquiring about the opposing party's intent to proceed before requesting a default, however, is not the same as the three-day notice required before a party can seek a default *judgment* under NRCP 55.

NRCP 55 states that a court may enter judgment by default against a party who has failed to defend a civil action. Where a party against whom default judgment is sought has appeared in the action, NRCP 55(b)(2) requires the applying party to satisfy heightened notice standards. Specifically, the rule requires that the party against whom judgment by default is sought must be

served "with written notice of the application for judgment at least 3 days prior to the hearing on such application." NRCP 55(b)(2). Therefore, before seeking an entry of default in a case, a party must inquire into the opposing party's intent to proceed, and once default is entered and before seeking a default judgment, the party must serve a three-day notice to satisfy NRCP 55(b)(2).

In this case, on December 14, 2006, Malik sent a three-day notice of intent to file default *judgment* under NRCP 55(b)(2). The default was not even entered by the clerk of the court until February 27, 2007, and consequently no default judgment (and no three-day notice of intent to obtain default judgment) could be made until after that date.[7] Malik conflates the notice requirements for default set out in RPC 3.5A and *Rowland* with the three-day notice requirement for default judgment of NRCP 55(b)(2). Even if the December 14, 2006, notice could be considered an inquiry about Landreth's intent to proceed before Malik sought default, satisfying RPC 3.5A and *Rowland*, once Malik granted more time extensions,[8] he had a renewed duty under RPC 3.5A and *Rowland* to again inquire about Landreth's intent to proceed before seeking a default.

### *The district court's order declining to set aside the default*

The family court denied Landreth's motion to set aside the default and entered default judgment against Landreth, finding that Malik had offered Landreth numerous opportunities to answer but that her delay warranted the entry of a default judgment. However, in its order, the court did not discuss whether Landreth received proper notice of Malik's intent to seek default under RPC 3.5A and this court's decision in *Rowland*. Although it is undisputed that Malik first served Landreth with notice on December 14, 2006, the court did not address the additional extensions of time Malik granted Landreth after the initial December 14 notice or Malik's failure to send Landreth a second notice after granting the additional extensions. Our reasoning in *Rowland*—that an attorney should determine the opposing party's intent to proceed in a lawsuit before seeking default—applies equally to subsequent and additional extensions of time to file responsive pleadings as it does to initial grants of extensions.

RPC 3.5A and *Rowland* require a party to determine its opponent's intent to respond before requesting a default. Malik failed to

---

[7]We do note that Malik satisfied NRCP 55(b)(2) by sending a notice of hearing for the default judgment on March 22, 2007, more than three days before the default judgment was entered on April 2, 2007.

[8]Malik admitted to granting time extensions after the December 14 notice in his opposition to Landreth's motion to set aside the default.

do so in this case. Although he admitted that he granted further time for Landreth to file an answer after serving her with a notice of intent to seek default, Malik failed to provide her with a subsequent notice of intent to seek default before filing a request for default from the district court. Therefore, we conclude that the district court abused its discretion by denying Landreth's motion to set aside the default under NRCP 55(c).

## CONCLUSION

Accordingly, because we conclude that a family court judge maintains all the constitutional powers of a district court judge, we hold that the family court judge did not lack judicial power or authority to consider the substantive and procedural aspects of Malik's complaint and enter judgment in this case. Nonetheless, we reverse the default judgment because the district court abused its discretion in upholding the default judgment when Malik did not serve Landreth with proper notice of his intent to seek default after granting Landreth additional extensions to file an answer.

SAITTA, GIBBONS, and PARRAGUIRRE, JJ., concur.

DOUGLAS, C.J., with whom PICKERING, J., agrees, dissenting:

I would deny the petition for rehearing and, therefore, I dissent.

While reasonable minds may disagree as to the plain meaning of a constitutional provision, I am concerned that the majority's opinion short-circuits standard jurisdictional requirements by implying that a district court judge enlarges the family court's jurisdiction simply by showing up for work. A court may exercise judicial power only when it has subject matter jurisdiction. *Rhode Island v. Massachusetts*, 37 U.S. 657, 718 (1838) (''Jurisdiction is the power to hear and determine the subject matter in controversy between parties to a suit, to adjudicate or exercise any judicial power over them . . . .''). A judge's power is not personal, as the majority's holding seems to suggest. It is institutional. If the court has jurisdiction, a duly qualified judge can preside over a dispute brought before that court. But if the court does not have jurisdiction, the judge cannot proceed. Jurisdiction belongs to the court, in other words; it is not a personal attribute of the judge. *See People v. Osslo*, 323 P.2d 397, 413 (Cal. 1958) (''[T]he jurisdiction which the judge exercises is the jurisdiction of the court, not of the judge.''); *White v. Superior Court*, 42 P. 480, 482 (Cal. 1895) (''[T]he jurisdiction [judges] exercise in any cause is that of the court, and not the individual.'').

The majority holds that all district judges have equal power to determine all cases and controversies under the Constitution. I do not disagree with this proposition in general; district court judges elected to family court positions could, if reassigned to divisions other than family court, preside over matters outside the family

court division's jurisdiction. However, I disagree that a district judge sitting in the family court division can entertain disputes no piece of which lies within the original jurisdiction of that division of the district court.

Today's holding is inconsistent with the plain language of Article 6, Section 6 of the Nevada Constitution and its pertinent history. Before the voters amended it in 1990, Article 6, Section 6 of the Nevada Constitution created the district courts and gave them their jurisdiction directly:

> The District Courts in the several Judicial Districts of this State have original jurisdiction in all cases excluded by law from the original jurisdiction of justices' courts. They also have final appellate jurisdiction in cases arising in Justices Courts and such other inferior tribunals as may be established by law. The District Courts and the Judges thereof have power to issue writs of Mandamus, Prohibition, Injunction, Quo-Warranto, Certiorari, and all other writs proper and necessary to the complete exercise of their jurisdiction. The District Courts and the Judges thereof shall also have power to issue writs of Habeas Corpus.

This provision (which remains as paragraph 1 of Article 6, Section 6 of the Nevada Constitution) did not give the Legislature the power to define or limit the district courts' jurisdiction. This led some to conclude that the Legislature could not create a specialized court with jurisdiction limited to family law matters without amending Article 6, Section 6 of the Nevada Constitution to give the Legislature that authority. Hearing on S.J. Res. 24 Before the Senate Judiciary Comm., 65th Leg. (Nev., January 24, 1989) (testimony of Judge Charles Thompson on behalf of the District Judges' Association noting that "in 1985 and 1987 statutes were proposed to create a [family] division of the [district] court and it was my testimony then that I didn't think the legislature had the constitutional power to control the internal workings of the court, and that it would require a constitutional amendment" for the Legislature to create a family court division). To eliminate that argument, the 1989 Legislature prepared and submitted to the voters a proposal to amend the Nevada Constitution to allow "the establishment of family courts." 1989 Nev. Stat., file no. 26, at 2222.[1]

---

[1] In 1989, the District Judges' Association opposed the proposed constitutional amendment on the grounds that the courts, not the Legislature, should determine "which cases [are] assigned to which judges." Hearing on S.J. 24 Before the Senate Judiciary Comm., 65th Leg. (Nev., January 24, 1989). This argument was noted and rejected by the 1989 Legislature. *Id.* (Assemblywoman Myrna T. Williams stating that the constitutional amendment was needed even though "some judges felt family court was a constitutional issue"; Senator Wagner disagreeing that "a constitutional amendment that would specifically delineate every single type of jurisdiction in the Constitu-

The proposal to amend Article 6, Section 6 to allow the Legislature to create and prescribe the jurisdiction of the family court division of the district courts was tendered to Nevada voters as Ballot Question 1 at the 1990 general election. Nevada Ballot Questions 1990, Nevada Secretary of State, Question No. 1, *available at* http://www.leg.state.nv.us/Division/Research/VoteNV/BallotQuestions/1990.pdf. It passed. This amendment added subparagraph 2(b) to Article 6, Section 6 of the Nevada Constitution. This subparagraph reads as follows:

> *The legislature may provide by law for: . . . [t]he establishment of a family court* as a division of any district court *and may prescribe its jurisdiction.*

(Emphases added.) *See* S.J. Res. 24, 64th Leg. (Nev. 1987); 1987 Nev. Stat., file no. 131, at 2444; S.J. Res. 24, 65th Leg. (Nev. 1989); 1989 Nev. Stat., file no. 26, at 2222.

The voters were told when they passed this amendment that they were giving the Legislature authority to create and define the jurisdiction of a specialized family court.[2] The "argument against passage" noted in the 1990 Ballot Question—which passed on a vote of 204,981 to 105,338—was more or less the argument the majority revives, *see supra* note 1, and adopts here: "The proposal, if approved, would allow the Legislature to establish a structure of family courts, which some judges oppose as inappropriate [legislative] regulation of the judicial system. *The proposal . . . does not define the jurisdiction of family courts, but would allow the Legislature to make that determination.*" Nevada Ballot Questions 1990, Nevada Secretary of State, Question No. 1, *available at* http://www.leg.state.nv.us/Division/Research/VoteNV/BallotQuestions/1990.pdf (emphasis added). *See Strickland v. Waymire*, 126 Nev. 230, 235 P.3d 605 (2010) (in interpreting a

---

tion" was needed; "a constitution is not a document which one burdens with specifics, but uses it as a general guideline of government, and then the statutes take over in terms of spelling out that jurisdiction").

[2] The 1990 voters who passed Ballot Question No. 1 were given this explanation of its purpose:

> District courts have general jurisdiction over most civil and criminal matters. In general, district court judges do not specialize in a particular area. They hear all cases filed in their courts. If this amendment is adopted, the Legislature would be authorized to establish a family court in each judicial district of the state and determine those matters which the family court could consider. . . . If the Legislature establishes a family court, it would be required to establish which cases the court could hear, such as divorce, child support, child custody, adoption and the termination of parental rights.

Nevada Ballot Questions 1990, Nevada Secretary of State, Question No. 1, *available at* http://www.leg.state.nv.us/Division/Research/VoteNV/BallotQuestions/1990.pdf.

constitutional amendment passed by the voters, the ballot question and its accompanying literature may be consulted, as may legislation passed at or about the time of the amendment, in construing the amendment).

The Legislature enacted NRS 3.223 pursuant to the authority conferred on it by the 1990 amendment to Article 6, Section 6 of the Nevada Constitution.[3] In NRS 3.223, the Legislature expressly limits the jurisdiction of the family court to the matters specified therein. Based on Article 6, Section 6(2)(b) of the Nevada Constitution and NRS 3.223, I would hold that the family court lacks jurisdiction over matters not set forth in that statute, except to the extent they are integrally related to a dispute within that court's statutory jurisdiction. Resolving a financial dispute between parties to a cohabitant, property-sharing relationship does not fall within any of the categories of dispute NRS 3.223 gives the family court original jurisdiction to hear. Without original jurisdiction over some aspect of the parties' dispute, a limited jurisdiction court cannot exercise pendent or supplemental jurisdiction over matters it otherwise could not hear. *See Barelli v. Barelli*, 113 Nev. 873, 877-78, 944 P.2d 246, 248-49 (1997). Additionally, as to the majority's use of *Barelli*, I feel an expansive reading of *Barelli* is incorrect; *Barelli* should be limited to being read as "related" matters within NRS 3.223 so as to keep our specially trained jurists of the family division in family matters instead of capital murder cases, construction defect cases, and business cases.

In interpreting our Constitution, this court should not lightly find ambiguity or irreconcilable conflict among its provisions. *Cf. Governor v. Nevada State Legislature*, 119 Nev. 277, 287, 71 P.3d 1269, 1275-76 (2003) (declaring the obligation to fund education in "irreconcilable conflict" with the provision requiring a supermajority to pass revenue-raising measures), *clarified on denial of reh'g in Governor v. Nevada State Legislature*, 119 Nev. 460, 76 P.3d 22 (2003), *and overruled by Nevadans for Nevada v. Beers*, 122 Nev. 930, 142 P.3d 339 (2006). Constitutional interpretation utilizes the same rules and procedures as statutory interpretation. *We the People Nevada v. Secretary of State*, 124 Nev. 874, 881, 192 P.3d 1166, 1170 (2008). Thus, it is imperative that, in addressing our Constitution, this Court harmonize all provisions in the Constitution, giving meaning to each. *See Ex Parte Shelor*, 33 Nev. 361, 373-74, 111 P. 291, 292-93 (1910) (" 'It is not to be supposed that any words have been employed without occasion, or

---

[3]The statute was passed as a companion to the constitutional amendment. Both the statute and the ballot materials by which Article 6, Section 6(2)(b) became part of our Nevada Constitution are directly relevant to its interpretation. I believe that the majority's holding, which in essence is that NRS 3.223 is unconstitutional, is contrary to the express mandate of the voters and the Legislature.

without intent that they should have effect as part of the law. Effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the court must harmonize them, if practicable, and must lean in favor of a construction that will render every word operative, rather than one which may make some words idle and nugatory.'" (quoting Thomas Cooley, *Constitutional Limitations* 72 (6th ed. 1890))). The majority's constitutional analysis too readily finds ambiguity and conflict in Article 6, Section 6.

The provisions in Article 6, Section 6 of the Nevada Constitution are not ambiguous. Courts and judges have power that is "necessary to the complete exercise of their jurisdiction," Nev. Const. art. 6, § 6(1), and the Legislature was authorized to "prescribe [the family court's] jurisdiction." Nev. Const. art. 6, § 6(2)(b). The Legislature exercised its constitutional power to "prescribe [the] jurisdiction" of the family court division of the district court when it enacted NRS 3.223. This statute vests exclusive jurisdiction over enumerated family-law-related matters in the family courts it establishes. In so doing, it took jurisdiction over family-law-related matters away from the regular division of the district court in districts with family law divisions but left jurisdiction over all non-family-law-related matters in the regular division of the district court.

The majority's reading fails to harmonize these provisions. Instead, it leaves district court judges not assigned to the family court division with less authority to hear cases than district court judges who are assigned to the family court division and by law have exclusive jurisdiction over all family-law-related matters. This result violates the very constitutional holding the majority declares. If Article 6, Section 6, Subsection 1 imbues every district court judge with complete jurisdiction over all matters enumerated in that paragraph, then how is it constitutional that a district court judge in a district with a family court cannot exercise jurisdiction over family court matters, because such jurisdiction is exclusively vested in the family court division? The result is that the Legislature cannot, in fact, "prescribe [the] jurisdiction" of the family court division of the district court because every district judge, as a matter of constitutional law, must have the same jurisdiction as every other. Thus does the majority's construction of Article 6, Section 6 in effect read Paragraph 2(b) out of the Constitution.

Amici curiae offer the argument that rehearing is necessary because our prior holding closed the family court's doors to actions that appear to belong in the family court. For example, it was argued that actions arising under NRS Chapters 122A (regulating domestic partnerships), 125D (the Uniform Child Abduction Act), and other family matters clearly should be in family court though were omitted from its grant of jurisdiction. NRS 3.223. The solu-

tion to these complaints is not through an expansive interpretation of district court judge's constitutional powers, but legislative amendment of the jurisdiction-granting statute. Our family courts should not be exercising jurisdiction in situations not covered by legislative enactment. *See* Nev. Const. art. 6, § 6(2).

Since the complaint lays jurisdiction in the family court based solely on the parties' failed cohabitant relationship, the default judgment was invalid because the court lacked subject matter jurisdiction over their dispute. *State Indus. Ins. System v. Sleeper*, 100 Nev. 267, 269, 679 P.2d 1273, 1274 (1984) (noting that when the district court lacks subject matter jurisdiction, the judgment rendered is void); Restatement (Second) of Judgments § 65 cmt. b (1982). With no subject matter jurisdiction to sustain it, the judgment should have been vacated on motion under NRCP 60(b)(4), assuming the motion was otherwise unobjectionable under *Matter of Harrison Living Trust*, 121 Nev. 217, 112 P.3d 1058 (2005). As this comports with the holding of *Landreth v. Malik*, 125 Nev. Adv. Op. 61, 221 P.3d 1265 (2009), I believe this petition for rehearing should be denied.

CHERRY, J., dissenting:

I join in the dissent issued by CHIEF JUSTICE DOUGLAS and JUSTICE PICKERING. In addition, I feel compelled to share my own thoughts on this unique matter. I hold our district judges of the family division in Clark and Washoe Counties in the highest regard and utmost esteem. These "work horses" have served our urban counties well since the creation of the family division in 1993. I was most satisfied with our previous decision in this matter and felt a rehearing was unnecessary. I did not feel that our previous decision relegated those dedicated jurists to an inferior position to our general jurisdiction judges in Clark and Washoe Counties, or our rural judges who have the onerous task of hearing civil, criminal, and family law cases.

What is clear to me from a reading of our constitution in Article 6, Section 6(2) is that the Legislature may provide by law for the establishment of a family court as a division of any district court and may prescribe its jurisdiction. The creation of said family court has been accomplished in our urban counties and the Legislature has, in fact, prescribed its jurisdiction. NRS 3.223.

The majority now invites these specially trained jurists of the family division to abandon their specialty in family matters and instead try capital murder cases, construction defect cases, and business court cases. To me, this is not what the public intended when the Constitution was amended to create a family division, nor does it serve the public's interest. Almost as important is that the majority misreads and misapplies the legislative history in creating the family division and holds that our Legislature does not have the

constitutional authority to limit the jurisdiction of judges in the family division, even though there is no ambiguity whatsoever in Article 6, Section 6(2) of the Nevada Constitution.

For the above reasons, I respectfully dissent from the majority opinion in this matter.