An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

MARY FRUDDEN AND JON E. FRUDDEN, INDIVIDUALLY, AND AS PARENTS AND GUARDIANS OF THEIR MINOR CHILDREN,
Appellants,
vs.
KAYANN PILLING, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS THE PRINCIPAL OF ROY GOMM ELEMENTARY SCHOOL AND IN HER CAPACITY AS AN EXECUTIVE BOARD MEMBER OF THE ROY GOMM ELEMENTARY SCHOOL PARENT-FACULTY ASSOCIATION, INC.; WASHOE COUNTY SCHOOL DISTRICT, A POLITICAL SUBDIVISION OF NEVADA; AND ROY GOMM ELEMENTARY SCHOOL PARENT-FACULTY ASSOCIATION, INC.,
Respondents.

No. 61932

**FILED**

DEC 16 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING*

This is an appeal from a district court order granting summary judgment in an open meeting law action. Second Judicial District Court, Washoe County; Brent T. Adams, Judge.

Roy Gomm Elementary School (Roy Gomm), a school in respondent Washoe County School District (WCSD), implemented a mandatory school uniform policy for the 2011-12 school year. Unhappy with Roy Gomm's uniform policy, which was allegedly prepared by respondent Roy Gomm Elementary School Parent-Faculty Association (the PFA) and its Uniform Committee, appellants Mary and Jon E. Frudden

 

14-40966

sued WCSD; Roy Gomm's principal, respondent KayAnn Pilling; and other defendants in federal court. The Fruddens alleged multiple claims, including First Amendment violations, violations of NRS Chapter 241, breach of a special relationship, negligent misrepresentation, and failure to comply with Nevada's education laws. The federal district court dismissed the Fruddens' First Amendment and tort claims with prejudice and declined to take jurisdiction over their other state law claims. *Frudden v. Pilling*, 842 F. Supp. 2d 1265, 1270-71, 1282 (D. Nev. 2012), *rev'd*, 742 F.3d 1199, 1208 (9th Cir. 2014). The Ninth Circuit Court of Appeals reversed and remanded the dismissal of the Fruddens' First Amendment claims. *Frudden v. Pilling*, 742 F.3d 1199, 1208 (9th Cir. 2014).

The Fruddens then filed the present lawsuit in the state district court, originally naming only WCSD and Pilling as defendants. The Fruddens argued that the PFA's Uniform Committee violated NRS Chapter 241's open meeting requirements when preparing Roy Gomm's uniform policy and that WCSD and Pilling violated multiple Nevada education statutes by enforcing the uniform policy.

Instead of filing an answer, WCSD and Pilling filed a motion for summary judgment against the Fruddens' claims. After WCSD's and Pilling's motion was briefed, but before it was decided, the Fruddens filed an amended complaint in which they restated their allegations against Pilling and WCSD and added the PFA as a defendant. The amended complaint sought (1) a declaration that the uniform policy was void and (2)

compensatory and punitive damages.[1] The district court granted WCSD and Pilling's motion for summary judgment. The district court found that the PFA was not a public body under NRS 241.015 and thus was not subject to NRS Chapter 241's open meeting requirements. The district court also found that the Fruddens did not have an implied private right of action for the alleged violations of Nevada's education statutes.[2]

---

[1]To the extent that the Fruddens sought declaratory relief under the theory that the uniform policy was void for a lack of authority, their claim is without merit because they failed to demonstrate that any Nevada law or WCSD policy prohibited Pilling from enforcing a uniform policy at Roy Gomm that WCSD did not impose. *See, e.g.*, NRS 392.415 (permitting a school district's board of trustees to establish a uniform policy without limiting a principal's authority to enforce a school's uniform policy). Nor have they demonstrated that enforcement of a school uniform policy that was not created by WCSD was outside Pilling's express or implied authority as principal of Roy Gomm. *See, e.g., Ronnow v. City of Las Vegas*, 57 Nev. 332, 342-43, 65 P.2d 133, 136 (1937) (providing that a municipal entity has both express and implied powers).

[2]The district court did not err in making this determination. The Fruddens failed to demonstrate that the pertinent statutes, legislative history, policies, and/or the underlying purposes of the legislative schemes afford them an implied private right of action under NRS 386.365, NRS 388.070, NRS 392.415, NRS 392.457, NRS 392.4575, NRS 392.463, NRS 392.4644, WCSD Board Policy 5039, or WCSD OSP-P002. *See Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 958-59, 194 P.3d 96, 100-01 (2008); *see also Cort v. Ash*, 422 U.S. 66, 78 (1975). Nor have the Fruddens shown that NRS 126.036, which codifies the fundamental right to raise one's child, allows them to challenge Roy Gomm's policies. *See Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395-97 (6th Cir. 2005) (holding that the fundamental right to raise one's child does not include a right to control the application of a public school's policies to one's child who attends the school).

Nine days after the district court granted WCSD's and Pilling's motion for summary judgment, the Fruddens obtained a clerk's entry of default against the PFA for the PFA's failure to respond to the Fruddens' amended complaint. NRCP 55(a). WCSD, Pilling, and the PFA then filed a motion to vacate the entry of default. The Fruddens filed motions to vacate and revise the district court's summary judgment order.

The district court denied the Fruddens' motions and granted WCSD, Pilling, and the PFA's motion. The district court explained that its original summary judgment order applied to the Fruddens' claims against the PFA. In doing so, the district court set aside the entry of default against the PFA "because [the Fruddens] did not inquire about [WCSD's, Pilling's, and the PFA's] intent to proceed or respond and did not satisfy the notice requirements as required under NRCP 55(b)(2)." The Fruddens now appeal, challenging the district court's orders granting summary judgment and vacating the entry of default.

As we explain below, we conclude that the district court (1) erred in finding that the PFA was not a "public body" under NRS 241.015(3)(a) before July 1, 2011; (2) did not err in finding that the PFA was not a "public body" under NRS 241.015(3)(a) after the 2011 amendment to this statute took effect on July 1, 2011; and (3) correctly vacated the clerk's entry of default against the PFA but did so for the wrong reason.[3]

---

[3]We have considered the parties' remaining arguments, including those regarding whether the district court erred by (1) not addressing the Fruddens' breach of fiduciary duty claim and (2) sua sponte granting summary judgment to the PFA. These contentions are without merit.

*The PFA could have been a public body under NRS 241.015(3)(a) before July 1, 2011; however, it was not a public body under the amended version of NRS 241.015(3)(a) on and after July 1, 2011*

NRS Chapter 241 establishes Nevada's open meeting law. It states that "[e]xcept as otherwise provided by specific statute, all meetings of public bodies must be open and public, and all persons must be permitted to attend any meeting of these public bodies." NRS 241.020(1) (2009); *see also* NRS 241.020(1) (2011) (stating the same). If the PFA was a public body prior to the 2011 amendments, its meetings should have been open and public as provided for by NRS 241.020.

Until July 1, 2011, NRS 241.015(3)(a) (2009) defined a public body for purposes of NRS Chapter 241 by the entity's identity and function:

> Except as otherwise provided in this subsection, "public body" means:
>
> (a) Any administrative, advisory, executive or legislative body of the State or a local government which expends or disburses or is supported in whole or in part by tax revenue or which advises or makes recommendations to any entity which expends or disburses or is supported in whole or in part by tax revenue, including, but not limited to, any board, commission, committee, subcommittee or other subsidiary thereof and includes an educational foundation as defined in subsection 3 of NRS 388.750 and a university foundation as defined in subsection 3 of NRS 396.405.

In 2011, the Legislature amended NRS 241.015(3)(a) by adding the qualifier that a public body is created by one of seven authorities listed in sub-subparagraphs 1-7, thereby narrowing the

definition of a public body. 2011 Nev. Stat., ch. 383, § 4, at 2385-86. This amendment became effective on July 1, 2011.[4] *Id.* at § 8, at 2390. Though at least some of the PFA's meetings occurred before the 2011 amendment became effective, the parties do not address which version applies in the present case or whether it matters. The Fruddens argue that the PFA is, and has been, a public body subject to the open meeting law because it is an educational foundation as defined in NRS 388.750 and is thus expressly included in the statute. WCSD, Pilling, and the PFA argue that the PFA was never a public body because it was not created by one of the authorities listed in NRS 241.015(3)(a)(1)-(7) (2011).

### *Standard of review*

We review de novo a district court's order granting summary judgment and view "the evidence, and any reasonable inferences drawn from it, . . . in a light most favorable to the nonmoving party." *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005).

We also review de novo a district court's interpretation of a statute. *Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010). When interpreting a statute, legislative intent "is the controlling factor." *Robert E. v. Justice Court of Reno Twp., Washoe Cnty.*, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983). "When a statute is clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of construction." *Cromer*, 126 Nev. at 109, 225 P.3d at 790. "In assessing a statute's plain meaning, provisions are read as a

---

[4]The definition of public body is now located at NRS 241.015(4); no relevant substantive changes have been made to this definition since 2011. 2013 Nev. Stat., ch. 193, § 6, at 727-29.

Supreme Court
OF
Nevada

(O) 1947A

6

whole with effect given to each word and phrase." *City of Las Vegas v. Evans*, 129 Nev. ___, ___, 301 P.3d 844, 846 (2013).

*The 2011 amendment to NRS 241.015(3)(a) only applies prospectively*

A preliminary issue in our analysis concerns which version of NRS Chapter 241 applies. The district court concluded, without reference to authority, that because the Fruddens filed their first federal complaint after the effective date of the 2011 amendment to NRS 241.015, the amended version of the law applied to this case. The district court's conclusion that the date on which the Fruddens filed their first complaint dictates which version of the statute applies is incorrect because NRS Chapter 241's substantive requirements govern how public bodies conduct meetings and not subsequent litigation that may arise about them. *See* NRS 241.020 (establishing requirements for open meetings). Therefore, the version of NRS 241.015 that existed at the time of a meeting applies to the meeting unless later amendments to the statute apply retroactively.

The 2011 amendment does not discuss whether it was intended to apply retroactively. "[W]e generally presume that [newly enacted statutes] apply prospectively unless the Legislature clearly indicates that they should apply retroactively or the Legislature's intent cannot otherwise be met." *Valdez v. Emp'rs Ins. Co. of Nev.*, 123 Nev. 170, 179, 162 P.3d 148, 154 (2007). The Legislature's intent, as articulated by NRS 241.015(3)(a) (2011)'s plain meaning, was to identify which entities must comply with the open meeting law. 2011 Nev. Stat., ch. 383, § 4, at 2385-86. We conclude that the 2011 amendment to NRS 241.015(3)(a) applies prospectively. Therefore, we hold that the pre-amendment version of NRS 241.015(3)(a) applied before July 1, 2011, and the amended version of NRS 241.015(3)(a) applied on and after July 1, 2011.

*There is a genuine issue of fact as to whether the PFA is an educational foundation pursuant to NRS 388.750*

One type of entity that is identified in both versions of NRS 241.015(3)(a)'s definition of "public body" is an "educational foundation." Therefore, if the PFA is an educational foundation and meets the other requirements of NRS 241.015(3)(a), it is a public body subject to the open meeting law.

NRS 388.750(3) defines an educational foundation as:

[A] nonprofit corporation, association or institution or a charitable organization that is:

(a) Organized and operated exclusively for the purpose of supporting one or more kindergartens, elementary schools, junior high or middle schools or high schools, or any combination thereof;

(b) Formed pursuant to the laws of this State; and

(c) Exempt from taxation pursuant to 26 U.S.C. § 501(c)(3).

To be an educational foundation, an entity must meet all three elements set out in NRS 388.750(3).

NRS 388.750 does not define the phrase "purpose of supporting" as is used in NRS 388.750(3)(a). Therefore, "we give effect to the plain and ordinary meaning of [those] words" when interpreting this phrase. *Cromer*, 126 Nev. at 109, 225 P.3d at 790. "Supporting" is the gerund form of the verb "support" which means "[t]o provide for or maintain, by supplying with money or necessities" and "[t]o aid the cause, policy, or interests of." *The American Heritage Dictionary* 1804 (3rd ed. 1996). Thus, "support" is a broad term which encompasses both providing resources to and serving the interests of another. However, the use of a broad term in a statute does not necessarily create ambiguity. *See Fourth*

SUPREME COURT
OF
NEVAOA

(O) 1947A

8

*St. Place, LLC. v. Travelers Indem. Co.*, 127 Nev. ___, ___, 270 P.3d 1235, 1243 (2011) (holding that a contract's use of a broad term did not make the contract's provision ambiguous). Therefore, to meet the first element of NRS 388.750(3), an entity must act to further its exclusive objective or goal of providing resources to or otherwise promoting a school or its mission.

With respect to the PFA's objective goal, the Fruddens proffered evidence showing that the PFA's objectives were to (1) "promote the welfare of children and youth in the home, school, and community"; (2) "enhance the educational environment"; (3) "educate its members about legislation or local issues related to the care and protection of children and youth"; and (4) "bring the home and school into closer relation so that parents and teachers may cooperate intelligently in the education of children and youth." In addition, the WCSD and Pilling proffered evidence that the PFA "support[ed] a number of education-related activities at Roy Gomm."

Of these proffered objectives, the PFA's goal of "educat[ing] its members about legislation or local issues related to the care and protection of children and youth" has the least apparent focus on supporting a school. Since we view the evidence and draw reasonable inferences in favor of the nonmoving party, *Wood*, 121 Nev. at 729, 121 P.3d at 1029, we draw the reasonable inference that educating parents, faculty, and other PFA members "about legislation or local issues related to the care and protection of children and youth" could support Roy Gomm because the well-being of children can affect the work of the school and the education it provides to its students. Thus, there is a genuine issue of material fact as to whether the PFA was "[o]rganized and operated

exclusively for the purpose of supporting one or more" schools or if it has an objective other than to support a school. NRS 388.750(3)(a).

In addition, WCSD, Pilling, and the PFA proffered a printout from the Nevada Secretary of State's website which identifies the PFA as a nonprofit corporation organized under the laws of Nevada. The Fruddens proffered a printout of an Internal Revenue Service website that identifies the PFA as a tax-exempt organization. Though the record shows that WCSD and Pilling objected to some evidence produced by the Fruddens in opposition to WCSD's and Pilling's motion for summary judgment, there was no objection to the admission of either printout. Evidence provided without objection to a district court in conjunction with briefing about a motion for summary judgment may be used to evaluate the court's order granting summary judgment. *Whalen v. State*, 100 Nev. 192, 195-96, 679 P.2d 248, 250 (1984). Because there is evidence in the record which suggests that the PFA met each element of NRS 388.750(3), there is a genuine issue of material fact as to whether the PFA was an educational foundation. If the PFA was an educational foundation and it meets the requirements of NRS 241.015(3), then the PFA was a public body prior to the 2011 amendments.

*There is a genuine issue of material fact as to whether the PFA was a public body under NRS 241.015(3)(a) before July 1, 2011*

Before July 1, 2011, NRS 241.015(3) contained both identity and function requirements. The identity requirement was that the organization be one of the types of entities identified in NRS 241.015(3)(a). These included "board[s], commission[s], committee[s], subcommittee[s] or other subsidiar[ies] thereof *and includes an educational foundation as defined in subsection 3 of NRS 388.750.*" NRS 241.015(3)(a) (2009)

SUPREME COURT
OF
NEVADA

(O) 1947A

10

(emphasis added). Thus, if an entity was an educational foundation, it met the identity requirement of NRS 241.015(3)(a) (2009).

Since there is a genuine issue of material fact as to whether the PFA is an educational foundation, there also remains a genuine issue of material fact as to whether it fulfilled the identity prong of a public body under NRS 241.015(3)(a) (2009). The Fruddens proffered evidence that the Uniform Committee was part of the PFA. Thus, there is a genuine issue of material fact as to whether the Uniform Committee was a "committee, subcommittee or other subsidiary" of the PFA and thus was subject to any obligation that the PFA had under NRS Chapter 241.

To meet the function requirement of NRS 241.015(3)(a) (2009), an entity was required to either (1) "expend[ ] or disburse[ ] or [be] supported in whole or in part by tax revenue" or (2) "advise[ ] or make[ ] recommendations to any entity which expends or disburses or is supported in whole or in part by tax revenue." There is no dispute that the PFA does not expend, disburse or is supported by tax revenue. There is an issue, however, as to the scope of its advice and recommendations to Roy Gomm, an entity which is supported by tax revenue. To advise means to give advice, which is defined as "[g]uidance offered by one person . . . to another." *Black's Law Dictionary* 59 (8th ed. 2004); *see also State v. Webb*, 772 A.2d 690, 696 (Conn. App. Ct. 2001) (stating that "the term 'advise' means to give advice to . . . counsel . . . caution, warn . . . recommend . . . to give information or notice to: inform, apprise" (internal quotations omitted)). To make a recommendation is to recommend, which means "to urge or suggest as appropriate, satisfying, or beneficial." *Webster's College Dictionary* 1086-87 (2nd ed. 1997).

WCSD, Pilling, and the PFA argue that an entity that is not supported by and does not expend tax revenue is only a public body if it advises *about* the expenditure or use of tax revenue, and the PFA does not involve itself in such matters. However, this argument is unpersuasive because it imposes a subject matter limitation on the advice an entity gives that is not included in NRS 241.015(3)(a). The statute's function requirement describes the entity as one "which advises or makes recommendations to any entity which expends or disburses or is supported in whole or in part by tax revenue." NRS 241.015(3)(a) (2009). NRS 241.015(3)(a) (2009) limits its scope based on the recipient of the advice, not the subject matter of the advice. Thus, an entity meets the function requirement for NRS 241.015(3)(a) if it offers guidance, information, or suggestions to an entity supported by or spending tax revenue.

The Fruddens proffered evidence suggesting that the PFA or Uniform Committee advised or made recommendations to Pilling. This evidence includes an email from Pilling to Mary Frudden stating that the Uniform Committee was "preparing [its] written report/policy" regarding uniforms at Roy Gomm and a document stating that the Uniform Committee "will be responsible for implementing and evaluating the school uniform policy." Considering this evidence in a light most favorable to the Fruddens, the nonmoving party, there is a genuine issue of material fact as to whether the PFA met the function requirement of NRS 241.015(3)(a) (2009) by advising Roy Gomm prior to July 1, 2011. Accordingly, the district court erred in granting summary judgment on the Fruddens' open meeting law claim with regard to purported meetings which occurred before this date.

*The PFA was not a public body under NRS 241.015(3)(a) on or after July 1, 2011*

The 2011 amendment preserved the requirements set out in the prior version of NRS 241.015(3)(a) but added a requirement that an entity be created by one of seven enumerated methods. 2011 Nev. Stat., ch. 383, § 4, at 2385-86. NRS 241.015(3)(a) (2011) states:

> Any administrative, advisory, executive or legislative body of the State or a local government consisting of at least two persons which expends or disburses or is supported in whole or in part by tax revenue or which advises or makes recommendations to any entity which expends or disburses or is supported in whole or in part by tax revenue, including, but not limited to, any board, commission, committee, subcommittee or other subsidiary thereof and includes an educational foundation as defined in subsection 3 of NRS 388.750 and a university foundation as defined in subsection 3 of NRS 396.405, if the administrative, advisory, executive or legislative body is created by:
>
> (1) The Constitution of this State;
>
> (2) Any statute of this State;
>
> (3) A city charter and any city ordinance which has been filed or recorded as required by the applicable law;
>
> (4) The Nevada Administrative Code;
>
> (5) A resolution or other formal designation by such a body created by a statute of this State or an ordinance of a local government;
>
> (6) An executive order issued by the Governor; or
>
> (7) A resolution or an action by the governing body of a political subdivision of this State.

(O) 1947A

Thus, the plain meaning of NRS 241.015(3)(a) (2011) provides that being created by one of these seven enumerated methods is a necessary condition for an entity to be subject to the open meeting law requirements.[5]

There is no evidence in the record that the PFA was created by one of the seven methods enumerated in NRS 241.015(3)(a)(1)-(7) (2011). Accordingly, the PFA was not a public body subject to the open meeting law after the 2011 amendment. There is, however, evidence in the record to suggest that it was an educational foundation within the meaning of NRS 388.750(3)(a). Thus, the PFA could have been a public body under NRS 241.015(3)(a) (2009).

Therefore, the district court erred in granting summary judgment regarding the PFA's status as a public body under NRS 241.015(3)(a) (2009) before July 1, 2011. It did not err in granting summary judgment regarding the PFA's status as a public body under NRS 241.015(3)(a) (2011) on and after July 1, 2011.

---

[5]In advocating a result that is contrary to the statute's plain meaning, the Fruddens make arguments which we conclude are without merit. First, they contend that NRS 388.750 requires educational foundations to have open meetings. This argument misconstrues NRS 388.750(1)(a)'s provision that "[a]n educational foundation . . . [s]hall comply with the provisions of chapter 241 of NRS" which only requires that an educational foundation comply with the open meeting laws if it was a public body as defined by NRS 241.015(3)(a) (2011). Second, they contend that an educational foundation is exempt from NRS 241.015(3)(a)(1)-(7) (2011)'s creation requirement because it is not an "administrative, advisory, executive or legislative body." This argument is incorrect because NRS 241.015(3)(a) (2011) identifies an educational foundation as a type of "administrative, advisory, executive or legislative body" and thus subjects an educational foundation to NRS 241.015(3)(a)(1)-(7) (2011)'s creation requirement.

*The district court abused its discretion in vacating the clerk's entry of default, but this abuse does not warrant reversal*

The Fruddens argue that the district court abused its discretion in setting aside the clerk's entry of default because the PFA failed to show good cause and committed inexcusable neglect by failing to respond to the Fruddens' amended complaint. WCSD, Pilling, and the PFA argue that the district court properly exercised its discretion because the Fruddens did not renew their inquiry about whether the PFA would defend the lawsuit.

"[We] review[] a lower court's decision to set aside an entry of default for an abuse of discretion." *Landreth v. Malik*, 127 Nev. ___, ___, 251 P.3d 163, 171 (2011). "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Am. Sterling Bank v. Johnny Mgmt. LV, Inc.*, 126 Nev. ___, ___, 245 P.3d 535, 538-39 (2010) (internal quotations omitted). A district court abuses its discretion by applying an incorrect interpretation of law. *Bergmann v. Boyce*, 109 Nev. 670, 674, 856 P.2d 560, 563 (1993).

However, "[we] will affirm a district court's order if the district court reached the correct result, even if for the wrong reason." *Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. ___, ___, 245 P.3d 1198, 1202 (2010). Furthermore, "the district court may amend a judgment nunc pro tunc if the change will make the record speak the truth as to what was actually determined or done or *intended to be determined or done* by the court." *McClintock v. McClintock*, 122 Nev. 842, 845, 138 P.3d 513, 515 (2006) (internal quotations omitted).

NRCP 55(a) provides that the clerk shall enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" against the claim. Before seeking an entry of default, "a party must inquire into the opposing party's intent to proceed." *Landreth*, 127 Nev. at ___, 251 P.3d at 172. *Landreth* does not require a party to renew its inquiry unless the party granted its opponent extra time to respond to the pleading. *Id.* The three-day written notice requirement set out in NRCP 55(b)(2) for seeking a default judgment does not apply when a party seeks only an entry of default. *Id.*

A district court may vacate an entry of default "[f]or good cause shown." NRCP 55(c). Here, the Fruddens obtained an entry of default against the PFA after the PFA did not respond to the amended complaint. The record does not demonstrate that the Fruddens granted the PFA additional time to respond to the amended complaint. Upon WCSD, Pilling, and the PFA's motion, the district court vacated the entry of default because it found that the Fruddens failed to inquire into whether the PFA intended to defend the lawsuit or give the PFA three-days' notice before seeking the entry of default. This conclusion was incorrect because the uncontested evidence in the record demonstrated that Mary Frudden emailed the law firm representing the PFA to inquire about the PFA's intent to defend the lawsuit. Thus, the Fruddens complied with *Landreth*'s inquiry requirement. Since NRCP 55(b)(2) does not apply to an entry of default, the Fruddens' purported non-compliance with its three-day notice requirement cannot establish good cause to vacate the entry of default. Because the district court applied an incorrect legal standard and made factual findings that were inconsistent with

uncontested evidence in the record, it abused its discretion in vacating the entry of default against the PFA.

This abuse of discretion, however, was without legal significance because the district court's order vacating the entry of default stated that the PFA was a party to the prior order granting summary judgment. Thus, this order merely clarified the prior order to reflect that the district court had intended to grant summary judgment to WCSD, Pilling, *and* the PFA. As a result of the entry of summary judgment in its favor, the PFA had no duty to answer the Fruddens' amended complaint at the time that the clerk's default was entered.

Even though the district court abused its discretion in vacating the entry of default, its nunc pro tunc order provided an independent legal basis to vacate the entry of default. Therefore, we affirm the district court's order vacating the entry of default because it reached the correct result for the wrong reason.

*Conclusion*

The district court erred in applying NRS 241.015(3)(a) (2011) retroactively. Since there is a genuine issue of material fact as to whether the PFA was a public body under NRS 241.015(3)(a) (2009), the district court erred in granting summary judgment regarding the PFA's status as a public body before July 1, 2011. However, the district court did not err in granting summary judgment regarding the PFA's status as a public body on and after July 1, 2011. Thus, there is a genuine issue of material fact as to whether the PFA had a duty to comply with NRS Chapter 241's open meeting requirements when the uniform policy was created. Finally, the district court properly vacated the entry of default against the PFA

because its nunc pro tunc order applied its earlier grant of summary judgment to the PFA. Therefore, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Gibbons

_____, J.          _____, J.
Pickering                                      Hardesty

_____, J.          _____, J.
Parraguirre                                   Douglas

_____, J.          _____, J.
Cherry                                         Saitta

cc:    Hon. Brent T. Adams, District Judge
       Mary L. Frudden
       Washoe County School District Legal Department
       Maupin, Cox & LeGoy
       Washoe District Court Clerk